# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REYNALDO CRUZ, <br><br> Plaintiff, <br><br> v. <br><br> UNIÓN INDEPENDIENTE AUTÉNTICA DE LOS EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, THE PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, AND HON. RICARDO ANTONIO ROSSELLÓ NEVARES, in his official capacity as Governor of the Commonwealth of Puerto Rico, <br><br> Defendants. | Civil Case No. 17-2261-PAD |

## PLAINTIFF'S RESPONSE TO DEFENDANT RICARDO ANTONIO ROSELLÓ NEVARES'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure, Rule 12, Plaintiff Reynaldo Cruz ("Cruz"), by and through his undersigned attorneys, hereby files this brief in support of his Response to Defendant Hon. Ricardo Antonio Rosselló Nevares's ("the Governor") Motion to Dismiss (ECF No. 31).[1]

## INTRODUCTION

Cruz's Complaint seeks prospective injunctive relief to prevent the Governor from executing and enforcing specific provisions of the Puerto Rico Labor Relations Act, Law No. 130-1945, 29 L.P.R.A. § 62 *et seq.* ("PRLA"), which deprives Cruz of his First and Fourteenth

---

[1] Hereinafter, the Governor's Motion to Dismiss, ECF No. 31 (Jan. 24, 2018), will be cited to as "Gov. Mot. at ___."

1

Amendments rights under the U.S. Constitution. The Governor's Motion argues that Eleventh Amendment sovereign immunity bars Cruz's action, and that the Governor has nothing to do with this case. However, Cruz's suit against the Governor seeks to enjoin the enforcement of PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4), which are depriving him of his unconstitutional rights. Thus, Cruz's action is not barred under the *Ex parte Young* doctrine. *See* 209 U.S. 123 (1908). In *Ex parte Young*, plaintiffs sued the Minnesota attorney general to prevent the enforcement of unconstitutional state laws. *Id*. Likewise, the Governor here has a statutory duty under 3 L.P.R.A. § 1 to execute faithfully the laws of the Commonwealth of Puerto Rico. Therefore, the Governor is necessary to afford Cruz a complete remedy. For these reasons, the Eleventh Amendment's sovereign immunity bar does not apply to this case, and the Governor's Motion should be denied.

## LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the plaintiff's favor. *See, e.g., Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). A complaint must give fair notice of the plaintiff's claim and the grounds upon which it rests, and must allege a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007) (internal citations omitted). To allege a plausible entitlement to relief, a "plaintiff must plead sufficient 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Yet, a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *Twombly*, 550 U.S. at 555.

Cruz's Complaint states a plausible entitlement to relief against the Governor under *Ex*

*parte Young* because he alleges an ongoing violation of federal law and seeks prospective relief. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also See Ex parte Young*, 209 U.S. 123 (1908). Cruz's Complaint also sets forth factual allegations demonstrating his entitlement to relief based on the Governor's statutory duty under 3 L.P.R.A. § 1 to uphold and execute faithfully PRLA's unconstitutional provisions, which are depriving Cruz of his constitutional rights. The Governor's Motion seemingly discounts Cruz's well-pleaded allegations that describe the PRLA's unconstitutional requirements and the Governor's obligations to enforce them under the laws of the Commonwealth, but those are well-pleaded allegations nonetheless. *See, e.g., infra* at Section I (A).

## ARGUMENT

The Governor's Motion should be denied because the Eleventh Amendment does not bar Cruz from seeking prospective injunctive relief against the Governor for the PRLA's deprivation of his First and Fourteenth Amendment rights. The Governor acknowledges, as he must under the well-established *Ex Parte Young* doctrine, that the Eleventh Amendment does **not** bar suits for prospective injunctive relief against state officials to end an ongoing violation of federal law. Gov. Mot. at 6. *See Ex Parte Young*, 209 U.S. 123 (1908); *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1974) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating a federal law, he is not the State for sovereign-immunity purposes." (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945))). This is precisely the relief Cruz seeks from the Governor—Prospective injunctive relief to enjoin the Governor's enforcement of PRLA provisions that are depriving Cruz of his U.S. constitutional rights.

Federal courts faced with the question of whether an *Ex parte Young* suit avoids the Eleventh Amendment bar need only conduct "a straightforward inquiry" into whether the complaint "alleges an ongoing violation of federal law" and "seeks relief properly characterized as prospective.'" *Verizon*, 535 U.S. at 645 (quoting *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment). Conducting this inquiry in the instant case demonstrates that (I) Cruz's Complaint alleges an ongoing deprivation of his constitutional rights—that the PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4), is depriving him of his rights under the First and Fourteenth Amendments to the U.S. Constitution; and (II) Cruz seeks prospective injunctive relief against the Governor.

### I. Cruz's Complaint alleges an ongoing deprivation of his constitutional rights.

Cruz's Complaint alleges an ongoing deprivation of his rights under the First and Fourteenth Amendments to the U.S. Constitution. *Ex parte Young* only requires a simple "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law, irrespective of the claims' merits. *See Verizon*, 535 U.S. at 646. Cruz's Complaint alleges that PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4), are depriving him of his First and Fourteenth Amendment rights by authorizing labor organizations and employers to implement unconstitutional compulsory union membership and fee requirements.[2] *See generally*, Compl. at ¶¶61-73 (Count I-Compulsory Union Membership Requirements), and ¶¶74-90 (Count II-Compulsory Union Fee Requirements). For this simple reason, Cruz's case is not barred by the Eleventh Amendment.

---

[2] Cruz's employer is the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), and the labor organization acting as exclusive representative in the collective bargaining unit where he works, is the Unión Independiente Auténtica De Los Empleados De La Autoridad de Acueductos y Alcantarillados ("UIA"). *See, e.g.*, Compl. at ¶¶7-9, 20, 31-32.

**A. The allegations in Counts I and II of the Complaint establish that, under *Ex parte Young*, Cruz is entitled to relief because the PRLA is depriving him of his constitutional rights.**

Counts I and II of the Complaint set forth Cruz's rights under the First and Fourteenth Amendments to the U.S. Constitution (Compl. at ¶¶62-64, 74-80, 34-35), establish that Cruz attempted to exercise his constitutional rights (Compl. at ¶¶34-36), and allege that the PRLA is depriving him of those rights. Compl. ¶¶49, 51, 52, 67, 85 88. *See also Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014); *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2288 (2012); *Abood v. Detroit Board of Education,* 431 U.S. 209 (1977); *Debont v. City of Poway*, 158 L.R.R.M. (BNA) 2754, 2757 (S.D. Cal. 1998).

Count I alleges that PRLA, 29 L.P.R.A. § 69(1)(c) "authorizes employers to enter into 'all-union shop contracts' and 'maintenance of membership agreements' with labor organizations," which, "on its face and as applied, restrains Cruz's exercise of First Amendment freedoms and violates the U.S. Constitution." Compl. ¶¶67, 71-73. Count I explains that the First Amendment

> prohibits public employers and labor organizations from entering into and enforcing agreements that require bargaining unit employees to become and remain union members because such maintenance of membership requirements interfere with individuals' freedoms of speech, association, self-organization, assembly, petition, belief, thought, and conscience.

Compl. ¶64. The Complaint also establishes that PRLA, 29 L.P.R.A. § 69(1)(c) authorizes employers and labor organizations

> to enter into "all-union shop contracts" whereby "it is required as a condition of employment, that all the employees in such unit be members of a single labor organization," and "maintenance of membership agreements," (29 L.P.R.A. § 63(7)), whereby "it is required as a condition of employment, of all the employees who are members of the union at the time of the execution of the agreement or at other times thereafter, and under such other conditions as may be specified in the agreement, that they maintain themselves in good standing as members of the

5

> union during the life of the contract." (29 L.P.R.A. § 63(8))

Compl. ¶12. Based on these Count I allegations, Cruz shows that the PRLA—and the Governor—is causing and subjecting Cruz to the deprivation of his constitutional rights. *See* Compl. ¶¶61-73.

> Similarly, Count II alleges that the PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4)
>
> violate Cruz's free speech and associational rights under the First Amendment to the United States Constitution and Section 1983 by requiring Cruz as a nonmember to pay compulsory union fees as a condition of his employment and by authorizing PRASA to automatically deduct and convey compulsory union fees from Cruz's wages to UIA.

Compl. ¶85; and "PRLA, §§ 69(1)(b)-(c) and 84(4), which provide for the automatic withdrawal and conveyance of compulsory union dues from employees' wages, violate Cruz's First Amendment rights." Compl. ¶86. Count II describes Cruz's rights under the First and Fourteenth Amendment, and sets forth his allegations that

> any seizure of compulsory dues or fees for any reason and in any amount is unconstitutional under the First Amendment because, among other things, no compelling or otherwise sufficient state interest justifies compulsory fees or Cruz's support of unions, financial or otherwise.

Compl. ¶81; *see also* Compl. ¶¶75-78, 85, 88. Count II also sets forth additional allegations supporting why the PRLA's union fee requirements violate his rights. Compl. ¶¶43-52.

The Complaint shows that the PRLA, 29 L.P.R.A. § 69(1)(b), authorizes employers to deduct automatically any sum of money from the salary, earnings or income of an employee for the payment of dues to a labor organization when such deduction is required by the terms of a collective bargaining agreement. Compl. ¶13. The Complaint also shows that the PRLA, 29 L.P.R.A. § 84(4), authorizes employers

> to pay and deliver or to agree to pay or delivery money to employee representatives, and employee representatives are permitted to receive or accept

> or to agree to receive or accept money from an employer "with respect to money deducted from the wages, salaries, remunerations, or incomes of employees for the payment of dues in a labor organization, provided such deduction is required by virtue of the terms of a collective bargaining agreement executed between the employer and a labor organization.

Compl. ¶15. Based on the Count II allegations, Cruz shows that the Defendant Governor "caused and subjected Cruz to the deprivation of his rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments to the United States Constitution." S*ee* Compl. ¶¶90, 74-89. *See also Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*, No. 16-1466 (petition for writ of certiorari granted Sep. 28, 2017).

Despite Cruz's attempts to resign from union membership, UIA and PRASA—in reliance on PRLA, 29 L.P.R.A. § 69(1)(c)—denied his requests and "have continued to require Cruz to maintain his membership in the UIA, pay union dues, and submit to UIA membership requirements, all as a condition of employment." Compl. ¶66. Despite Cruz's exercise of free speech and associational rights, UIA and PRASA, in reliance upon the PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4), "violated, and continue to violate" constitutional rights to support financially a labor union as a condition of employment. Compl. ¶87. Cruz's allegations plainly demonstrate that PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4), are effecting an ongoing deprivation of his rights. Compl. ¶65.

> **B.** *Ex parte Young* **only requires a "straightforward inquiry" demonstrating an ongoing deprivation of rights, but Cruz sets forth allegations addressing the Governor's statutory duty with respect to the PRLA.**

The Governor objects that "no specific allegation is addressed towards him in his official capacity and no particular action or inaction is attributed to him as Governor." Gov. Mot. at 2. The Governor's objection misses the point of *Ex parte Young*. Where an action under *Ex parte Young* challenges the constitutionality of a statutory enactment, the Court is concerned with the

enactment's ongoing deprivation of federal rights, and with the state officials' *prospective* enforcement of the unconstitutional act, not with the state officials' past actions (which might be retroactive in nature). *See Verizon*, 535 U.S. at 645 ("The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'"). Accordingly, the U.S. Supreme Court merely requires the "straightforward inquiry" into whether the plaintiff alleges an ongoing deprivation of a federal right. Cruz so alleges here. *See supra* Section A. Therefore, Cruz may bring this suit to enjoin the Governor's prospective enforcement of the unconstitutional PRLA provisions.

Even so, the Governor is mistaken because Cruz's Complaint specifically addresses how the Governor's adherence to the unconstitutional provisions of the PRLA, and other actions, will deprive Cruz's constitutional rights. Count I alleges that, "Despite Cruz's exercise of First Amendment freedoms … Defendants [i.e., UIA, PRASA, ***and the Governor***] have continued to require Cruz to maintain his membership in UIA, pay union dues, and submit to UIA membership requirements, all as a condition of employment." Compl. ¶66 (emphasis added); *see also* Compl. at p.1 (expressly defining the term "Defendants" to include the Governor).

Count II alleges that Cruz seeks to enjoin "Puerto Rico's and the [Defendant ***Governor's***] practices of "forcing nonmembers to pay compulsory union fees to fund union activity of any kind," and explains that their practices are "severe and ongoing infringements of his rights to free speech, free association, and free choice." Compl. ¶52. Cruz's allegation further requests that the Court enjoin "Defendants [including ***the Governor***] from enforcing this unconstitutional arrangement." Compl. ¶¶52, 51. Cruz also emphasizes that "Puerto Rico's and Defendants' practices" are "unconstitutional to the extent that they force employees who resign from union membership to pay compulsory union fees for the costs of collective bargaining, contract

8

administration, and grievance adjustment." Compl. ¶2. The Governor's adherence to the PRLA's unconstitutional provisions and "faithful execution" of the compulsory membership and fee requirements deprives Cruz of his constitutional rights. Thus, Cruz alleges:

> But for [Defendant ***Governor's***] compulsory membership requirements and the PRLA's authorization of such requirements, Cruz would not be a UIA member, would not pay union dues or fees, and accordingly, had exercised his right to refrain from support or assistance of UIA.

Compl. ¶43 (emphasis added). As demonstrated, *supra*, in Section A, the Complaint's allegations set forth the compulsory union membership and fee requirements, demonstrates that the PRLA adopted and authorized practices and requirements that are depriving Cruz of his constitutional rights, and establishes the Governor's statutory duty under 3 L.P.R.A. § 1 to execute faithfully the PRLA's unconstitutional provisions. Thus, the Complaint's allegations satisfy the Court's "straightforward inquiry" under *Verizon*, and demonstrate Cruz's entitlement to prospective injunctive relief.

### C. The Governor is necessary to affording Cruz a complete remedy for the PRLA's continuing deprivation of his constitutional rights.

The Governor insists that he "has nothing to do with this case," positing that the Commonwealth plays no part in Cruz's employment or the "daily operations and management decisions of PRASA and its union," and does not enter into collective bargaining agreements with the employer and the union. *See* Gov. Mot. at 5. As the Governor knows, these factors are red herrings. The Governor admits from the outset that Cruz is seeking a "judgment ***to render unconstitutional portions of the Puerto Rico Labor Relations Act*** that hinge upon plaintiff's required membership [in] a labor organization and his objection to the collection of dues..." Gov. Mot. at 1 (emphasis added). *Ex parte Young* allows individuals to sue state officials to prevent them from enforcing enactments that deprive persons of their U.S. Constitutional rights,

9

irrespective of such involvement with the employer and labor organization. 209 U.S. 123 (1908); *Verizon*, 535 U.S. at 645. Here, Cruz is seeking prospective injunctive relief to end the PRLA's continuing deprivation of his rights. The Complaint establishes that the Governor is the state official charged with the statutory duty to execute faithfully the laws of the Commonwealth and supervise the executive and ministerial officers who administer the laws:

> [P]ursuant to 3 L.P.R.A. § 1, [the Governor] is charged with faithful execution of the laws of the Commonwealth and supervision of the official conduct of all executive and ministerial officers.

Compl. ¶10. Accordingly, *the Governor* must faithfully execute the PRLA's compulsory union membership and dues provisions. Despite the Governor's attempts to distance himself, the Complaint also shows that "Pursuant to the PRLA, 29 L.P.R.A. § 62(5), all collective bargaining contracts are 'declared to be instruments for the promotion of the public policy of the Government of Puerto Rico.'" Compl. ¶48. Thus, the Governor and the public policy of the Commonwealth are more deeply intertwined with the collective bargaining agreements than the Governor suggests. Nevertheless, the Governor's statutory duty to execute faithfully and uphold the PRLA's unconstitutional provisions makes him integral to the instant case.

Cruz cannot attain complete relief from the ongoing deprivations of his constitutional rights under any count of his Complaint without prospective injunctive relief against the Governor, because both UIA and PRASA have specifically refused to recognize Cruz's union membership resignation and *Hudson* objection on the basis of the PRLA. Cruz's Complaint demonstrates that, in depriving Cruz of his constitutional rights, UIA and PRASA specifically invoked their state-conferred rights under PRLA, 29 L.P.R.A. §§ 69(1)(c), to enter into maintenance of membership agreements. Compl. ¶¶36, 40-43:

> On or about April 24, 2017 … [UIA] refus[ed] to make just and due satisfaction

10

> of Cruz's claims and stat[ed] that ***Puerto Rico's labor relations law specifically establishes the right to bargain for the compulsory unionism clause*** contained in the CBA….

Compl. ¶40 (emphasis added). The Complaint further alleges that on or about December 13, 2016, when PRASA first rejected Cruz's request to resign from union membership and pay only that portion of dues used for union expenditures related to collective bargaining, PRASA asserted that "***under Puerto Rico's law***, all employees within a collective bargaining unit must maintain their membership in the labor organization that represents them." Compl. ¶38 (emphasis added). Subsequently, when PRASA refused to change its decision regarding Cruz's requests to resign from union membership, the employer repeated the same basic assertion, indicating that

> UIA and PRASA are free under the PRLA to negotiate clauses in collective bargaining agreements establishing "closed shop" and "union shop" arrangements, and [] it is permissible for the labor organization and employer to require in the CBA that all employees must remain members and pay dues as a condition of employment.

Compl. ¶41.

Without the Governor, PRASA and UIA can continue evading Cruz with justifications based on the state-conferred authorization in the PRLA. The Governor's absence impedes and impairs Cruz's ability to protect his rights under the U.S. Constitution. Because Cruz is seeking to enjoin the enforcement of the PRLA provisions, the Governor is indeed necessary to "afford plaintiff the remedy he is asking for." *See* Gov. Mot. at 7. In accordance with 3 L.P.R.A. § 1, the Governor is the state official with a statutory duty to enforce and uphold the challenged PRLA provisions. The Governor's authority over the PRLA's enforcement even encompasses "the official conduct of all executive and ministerial officers." *See* 3 L.P.R.A. § 1. Thus, the Governor is necessary for according complete and proper relief.

11

## II. Cruz's Complaint seeks prospective injunctive relief from the Governor.

Cruz's Complaint seeks prospective injunctive relief from the Governor to prevent the continued enforcement of PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4). *See* Compl., Prayer for Relief, ¶B(1) ("Award equitable relief, including … A permanent injunction enjoining Defendants, their officers, employees, agents, attorneys, and all other persons in active concert with them, from engaging in any of the activities listed in Part A above which the Court declares illegal."); Compl. at ¶52.

Cruz is not seeking monetary damages, nominal damages, or interest from the Governor. Even though it is correct that Cruz is "asking for an award of actual monetary damages and nominal damages plus interest," Gov. Mot. at 6, the Complaint specifically establishes that Cruz is only seeking compensatory relief from UIA and PRASA, not the Governor. *See* Compl., Prayer for Relief, ¶C(1)-(2) (seeking an "Award [of] actual damages for the injuries sustained as a result of *UIA's and PRASA's* unlawful interference with and deprivation of Cruz's [rights]") (emphasis added). As this Court recognized in its December 18, 2017 Order denying the Governor's request for an automatic stay, the Complaint's allegations show "there is no request for monetary relief as to the Governor." ECF No. 18.

Contrary to the Governor's suggestion, Cruz is not seeking restitution *from the Governor*. *See* Gov. Mot. 6-7. Cruz's prayer for relief in Paragraph B(2) seeks "restitution of all union dues seized from Cruz." Compl., Prayer for Relief, ¶B(2). Only PRASA and UIA seized such dues. Nowhere does the Complaint allege that the Governor actually collected union dues payments from Cruz (because he did not). It is only logical that Cruz seeks restitution of union dues seized by PRASA and UIA since October 26, 2016. The Complaint does not contemplate equitable restitution against the Governor. Even if the Complaint could be construed to seek restitution

12

against the Governor, the proper recourse is to deny such relief as to the Governor, not to dismiss the claim for prospective injunctive relief against enforcement of the PRLA. *See, e.g., Milliken v. Bradley*, 433 U.S. 267, 289 (1977); *Edelman v. Jordan*, 415 U.S. 651, 664, 677 (1974).

In addition to prospective injunctive relief against the Governor, Cruz is also seeking declaratory relief that the PRLA provisions are unconstitutional. *See* Compl., Prayer for Relief, ¶¶ A(1)-(3) (declaratory relief); Compl. at ¶¶1-2, 51-52. Cruz's prayer for declaratory relief is permissible because it is not connected to a demand for money damages against the Governor, and does not impose a monetary loss upon the Commonwealth for the past breach of a legal duty. *See Verizon*, 535 U.S. at 646 ("[plaintiffs' prayer for declaratory relief], to be sure, seeks a declaration of the *past*, as well as the *future*, ineffectiveness of the [states officials'] action … But no past liability of the State, or of any of its [officials] is at issue … Insofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction.") (emphasis in original) (internal citations and quotations omitted); *Frew ex rel. Frew v. Hankins*, 540 U.S. 431, 437 (2004) (recognizing that a court can order "measures ancillary to appropriate prospective relief.").

## CONCLUSION

For the foregoing reasons, the Governor's Motion to Dismiss should be DENIED in its entirety.

Date: February 7, 2018                    Respectfully submitted,

/S/ VERONICA FERRAIUOLI-HORNEDO
Veronica Ferraiuoli-Hornedo
USDC-PR 213814
vero@ferraiuoli.pr
Estudio Legal Ferraiuoli, PSC
P.O. Box 195384

13

San Juan, PR 00919-5384
Tel: (787) 296-4733
Fax: (787) 296-4430

**/S/ MATTHEW B. GILLIAM**
Milton L. Chappell (*pro hac vice*)
D.C. Bar No. 936153
*mlc@nrtw.org*
Mathew B. Gilliam (*pro hac vice*)
New York Bar No. 5005996
mbg@nrtw.org
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: (703) 321-8510
Fax: (703) 321-9319

*Attorneys for the Plaintiff*

**CERTIFICATE OF SERVICE**

    I certify that, on this day, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    By**: /s/ Matthew B. Gilliam**