IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REYNALDO CRUZ<br><br>Plaintiff<br><br>v.<br><br>UNIÓN INDEPENDIENTE AUTÉNTICA DE LOS EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCATARILLADOS, THE PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, and HON. RICARDO ANTONIO ROSSELLÓ NEVARES, in his official capacity as Governor of the Commonwealth of Puerto Rico.<br><br>Defendant | CASE NO. 17-2261 (PAD) |

**MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(6)
OF THE FED. R. CIV. PROC.**

TO THE HONORABLE COURT:

COMES NOW defendant UNIÓN INDEPENDIENTE AUTÉNTICA DE LOS EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS ("UIA") through the undersigned attorney, and respectfully STATES, ALLEGES and PRAYS, as follows:

### I.   Introduction

1.1   Plaintiff Reynaldo Cruz (herein "the Plaintiff" or "Cruz") filed his Complaint against the UIA on October 26th, 2017 for alleged violations of his civil rights, specifically under the First and Fourteenth Amendments in violation of 42 U.S.C. §1983. Cruz claims (i) a violation of his First Amendment rights as Defendants have allegedly

Case 3:17-cv-02261-PAD   Document 43   Filed 03/01/18   Page 2 of 20

Cruz v. UIA, et als.                                                                                           2
17-2261 (PAD)

"continued to require Cruz to maintain his membership in UIA, pay union dues, and submit to UIA membership requirements, all as a condition of employment;" (ii) a violation of his free speech and associational rights under the First Amendment to the US Constitution and Section 1983 by requiring Cruz to pay compulsory union dues as a condition of his employment; and, (iii) Plaintiff also seeks an injunctive and declaratory relief insofar Puerto Rico's legal framework does not provide under free association rights for an independent arbitrator regarding any challenge to the deducted dues, or information regarding his right to object and pay a reduced fee, or information regarding his right to challenge the calculation of the chargeable fee amount.

      1.2    The UIA respectfully submits the Complaint is fatally flawed as it lacks factual predicate allegations to provide any remedies to this suit under any of the causes of action, as discussed below. As such the Complaint should be dismissed with prejudice.

## II.   Dismissal Standard

### A. Rule 12(b)(6) of the Fed. R. Civ. Proc.

      2.1    Federal Rule of Civil Procedure 12(b)(6) provides that a party may move the Court to dismiss the case for failure to state a claim upon which relief can be granted. When addressing a motion to dismiss under this Rule, the court must accept as true the well-pleaded factual allegations in the complaint. <u>Washington Legal Foundation v. Massachusetts Bar Foundation</u>, 993 F.2d 962, 971 (1st Cir. 1993). Only well-pleaded facts can be taken as true, the Court will not accept a complainant's unsupported conclusions or interpretations of law. *Id.* Under a Rule 12(b)(6) motion the Court must review whether, construing the well-pleaded facts of the complaint in the

light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011).

    2.2    A Plaintiff, in his or her allegations, is obligated to provide the grounds of his entitlement to relief with more than just labels and conclusions, and a formulaic recitation of the elements of a cause of action. Bell Atlantic Corporation v. Twombly, 550 US 544, 557 (2007). As such a pleading does not require detailed factual allegations, but it does require "more than an unadorned the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 US 662, 678 (2009). If a pleading offers labels and conclusions or a formulaic recitation of the elements of a cause of action, then it simply will not suffice. *Id.* Naked assertions devoid of factual enhancement will not do either. *Id.*

    2.3    In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, that if accepted as true, will state a claim to relief that is **plausible on its face**. *Id.* A claim is facially plausible when the plaintiff provides enough factual content that allows the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* This plausibility standard goes beyond a probability requirement and asks more than a simple possibility that the defendant acted unlawfully. *Id.* If a complaint pleads facts that are merely consistent with the defendant´s liability it is short of the line between possibility and plausibility. *Id.* Furthermore, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, **but not shown**, that the plaintiff is entitled to relief. *Id.* at 679.

### III. Factual Allegations in the Complaint

3.1 Cruz's Complaint from paragraph 11 to paragraph 15 cites correctly the local statute which establishes the legal framework in which both the UIA and PRASA have collected and paid the union dues. In paragraphs 16 to 30, Plaintiff cites certain dispositions of the Collective Bargaining Agreement ("CBA"), which are admitted for the exclusive purpose of this motion to dismiss. Cruz's Complaint in essence avers the following:

   a. PRASA pays the wages of its employees, including Cruz's, withholds money from those employees' wages and pays a portion of those wages to UIA with no restrictions on UIA's use thereof. **Docket 1** ¶14.

   b. From the time [Cruz] began employment, through the present, PRASA has deducted full union dues from Cruz's wages and conveyed those dues to UIA with no condition upon their use, pursuant to the CBA. **Docket 1** ¶ 33.

   c. On or about October 26, 2016, Cruz sent letters to the UIA and PRASA immediately resigning from union membership and objecting to the payment of the portion dues that are used for UIA's political, ideological, and other nonbargaining spending. In his letters, Cruz requested that UIA and PRASA give immediate effect to his First Amendment rights. Cruz stated that he only wishes to authorize the deduction of that portion dues that was lawfully chargeable under the First Amendment of the United States Constitution. Cruz specifically requested his First Amendment procedural rights under Hudson, including the rights to a reduction of union dues to constitutionally-chargeable amounts, information regarding how the amount was calculated as verified by a certified public accountant, information regarding the union's procedure for keeping his dues in escrow, and the opportunity to challenge the calculation before an impartial decisionmaker. Finally, Cruz stated that if UIA and PRASA continue charging or spending dues without the procedural safeguards required by the First Amendment of the Constitution, it would violate his statutory and constitutional rights. **Docket 1,** ¶ 36.

   d. Collective bargaining with public employers, including UIA's and PRASA's collective bargaining, is inherently political and involves

        issues on which members of the bargaining unit and society at large differ or are controversial to certain public sector employees or society at large. **Docket 1** ¶ 47.

    e. Compulsory union membership and dues requirements infringe on Cruz's First Amendment rights because such requirements compel employees to support union speech and associate with a union against their will. **Docket 1** ¶ 49.

3.2    However, even though Plaintiff's controversy lies upon the allegation that these union dues were used for UIA's "political, ideological, and other nonbargaining spending" **Docket 1** ¶ 36, Cruz has blatantly failed to allege any single event, act or spending in the Complaint by the UIA, nor any date in which this unidentified ideological spending occurred. As such the Court need not credit bald assertions, periphrastic circumlocutions, or unsubstantiated conclusions. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

### IV. Legal Discussion and Analysis

**A. Failure to state a union expenditure on ideological causes not germane to the Collective Bargaining Agreement**

4.1    Plaintiff Cruz has filed the instant Complaint for alleged violations to his First Amendment rights against compelled speech and compelled association. These allegations are based on the fact that Cruz is employed in a PRASA bargaining unit exclusively represented by the UIA by virtue of the CBA existing between PRASA and UIA. However, the situation as alleged by Cruz is permissible in light of the Supreme Court's decision in Abood v. Detroit Bd. Of Educ., 431 US 209 (1977), and does not present allegations which if taken as true would represent specific and tangible violations of Cruz's First Amendment Rights. In Abood the Supreme Court found:

> [N]o constitutional barrier to an agency shop agreement between a municipality and a teacher's union insofar as the agreement required

> every employee in the unit to pay a service fee to defray the costs of collective bargaining, contract administration, and grievance adjustment. The union, however, could not, consistently with the Constitution, collect from dissenting employees any sums for the support of ideological causes not germane to its duties as collective-bargaining agent.

Ellis v. Railway Clerks, 466 US 435, 477 (1984) referencing Abood

4.2     In light of the Supreme Court's expressions, in order for there to exist a violation of a dissenting union member's First Amendment right, the offending public sector labor union must have collected sums of money from said members and used them to support ideological causes not central to its duties. Taking this as a starting point the UIA calls attention to the fact that Cruz's Complaint at no point presents any well-pleaded factual allegation as to any ideological cause that the UIA has supported or engaged with the money that is collected as part of the union dues. The Complaint is devoid of any factual allegation as to any instance in which the union dues paid to the UIA have been used to force ideological conformity or otherwise impair the free expression of the Plaintiff.

4.3     In light of this, the Honorable Court should bear in mind the following expressions in Abood in reference to a previous case, Railway Employees' Dept. v. Hanson, 351 US 225 (1956):

> The record in Hanson contained no evidence that union dues were used to force ideological conformity or otherwise to impair the free expression of employees, and the Court noted that "[i]f 'assessments' are in fact imposed for purposes not germane to collective bargaining, a different problem would be presented." But the Court squarely held that "the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work… does not violate… the First… Amendmen[t]."

Abood, *supra* at 219.

The Court should note that the same situation is presented here as the Complaint does not allege at any point any specific ideological spending which would impinge on Cruz's First Amendment rights. The Complaint therefore fails to present a claim upon which relief can be granted in accordance to the doctrines established in <u>Twombly</u>, *supra*, and <u>Iqbal</u>, *supra*.

     4.4    Cruz states that compulsory union dues and membership infringe on his First Amendment rights as he is forced to support the UIA. However, this is not a factual allegation that gives an example of ideological spending which would point to the UIA spending dues on activities that are not germane to collective bargaining agreements. As such, this allegation invites the reader to make a broad conclusory jump without providing any specific factual allegations establishing an ideological conduct on part of the UIA which would violate Cruz's First Amendment rights.

     4.5    Cruz also alleges that collective bargaining with public employers "is inherently political and involves issues on which members of the bargaining unit and society at large differ or are controversial to certain public employees or society at large." **Docket 1** ¶ 47. However, this treatment would mean that collective bargaining agreements negotiated by public sector unions would be inherently different from the collective bargaining agreements negotiated by private sector unions. This would require a different treatment of the First and Fourteenth Amendment rights of public and private sector union members. The Supreme Court had a chance to evaluate this contention in <u>Abood</u> and flatly rejected it, explaining:

> There can be no quarrel with the truism that because public employee unions attempt to influence governmental policymaking, their activities – and the views of members who disagree with them – may be properly termed political. But that characterization does not raise the ideas and

> beliefs of public employees onto a higher plane than the ideas and beliefs of private employees. It is no doubt true that a central purpose of the *First Amendment* "was to protect the free discussion of governmental affairs." Buckley v. Valeo, 424 US 1, 14 and Mills v. Alabama, 384 US 214, 218. But our cases have never suggested that expression about philosophical, social, artistic, economic, literary, or ethical matters – to take a nonexhaustive list of labels – is not entitled to full *First Amendment* protection. Union members in both the public and private sectors may find that a variety of union activities conflict with their beliefs. Compare e.g., *supra* at 222, with post, at 256-257. Nothing in the *First Amendment* or our cases discussing its meaning makes the question whether the adjective "political" can properly be attached to those beliefs the critical constitutional inquiry.
>
> The differences between public- and private-sector collective bargaining simply do not translate into differences in *First Amendment* rights.
>
> Abood v. Detroit Bd. of Educ., 431 US 209, 231-232 (1977)

4.6     Regardless of the contentions of Cruz, the fact of the matter is that PRASA operates differently from the public sector employee unions which were envisioned and discussed in Abood. PRASA's structure is analogous to that of a private corporation, it can contract freely, can buy and dispose of property, has complete dominion over its properties and activities, and can obtain loans and emit bonds for any corporate ends. Autoridad de Acueductos y Alcantarillados v. Unión de Empleados de la Autoridad, 105 DPR 437, 456 (1976). PRASA is undoubtedly formed as a private corporation and as a matter of fact operates as one. *Id.* at 457.

4.7     Cruz is obligated to provide the grounds of his entitlement to relief with more than just labels and conclusions, and a formulaic recitation of the elements of a cause of action. Cruz does not have to provide detailed factual allegations, but he does have to provide some sort of factual allegation to present a well pleaded complaint. So far he has failed to provide sufficient factual matter, which if accepted as true, would state a claim to relief that is **plausible on its face**. Cruz has not provided one specific

example of an occasion in which the UIA has spent dues on ideological purpose that differ from his own. In this sense, the Court should note that the plausibility standard goes beyond a probability requirement and asks more than a simple possibility that the defendant acted unlawfully, something that Cruz has not been able to allege.

### B. Claims under 42 USC § 1983

#### 1. Applicable law.

4.8     The federal cause of action in the present complaint stems from statute 42 U.S.C. §1983 as well as the First and Fourteenth Amendments to the Constitution of the United States. Under Section 1983 there are two necessary elements for recovery to be available to the Plaintiff, "First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and the laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

4.9     Furthermore, the deprivation of the Plaintiff's constitutional right must be done under color of state law. With regards to this requirement the Supreme Court in Rendell-Baker v. Kohn, 457 US 830, 838 (1982), stated:

> In Unites States v. Price, 383 US 787 (1966), the Court stated: In cases under § 1983, **under color of law has consistently been treated as the same thing as the state action required under the Fourteenth Amendment**. See also, United States v. Classic, 313 US 299, 326 (1941). The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: **is the alleged infringement of federal rights fairly attributable to the states**. (Emphasis supplied and internal quotations omitted)

Case 3:17-cv-02261-PAD   Document 43   Filed 03/01/18   Page 10 of 20

Cruz v. UIA, et als.                                                                                           10
17-2261 (PAD)

4.10   Depending on which right has been allegedly violated, there can be a requirement of merely acting under color of state law or, in addition, a requirement of actual state action. Lugar v. Edmonson Oil Co., 457 US 922, 930 (1982). In particular, when the alleged deprived right emanates from the Fourteenth Amendment, state action is required in addition to conduct executed under color of state law. *Id*, at 924. The Supreme Court has held that if the right asserted protects individuals only from governmental action, as with the First and Fourteenth Amendments, plaintiffs must demonstrate that the violation was accomplished by state action, not just under color of state law. *Id*, at 930. Of course, once state action has been demonstrated, it follows that there has been action under color of state law. *Id*, at 935.

4.11   A claim under Section 1983 excludes from its reach merely private conduct no matter how discriminatory or wrongful. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 US 40, 50 (1999). Under Section 1983 a private party's conduct is considered state action by the First Circuit in three situations:

> A private party may become a state actor if he assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]."
>
> Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011) citing Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005).

These tests are known as the public function test, the state compulsion, test and the nexus/joint action test. As to the defendant in a Section 1983 suit, the party charged with the deprivation must be a person who may fairly be said to be a state actor under one of the previously mentioned tests.

4.12   Under the public function test, state action exists "in the exercise by a private entity of powers traditionally <u>exclusively</u> reserved to the state." <u>Santiago</u>, *supra* at 69 citing <u>Jackson v. Metro. Edison Co.</u>, 419 US 345, 352 (1974) (emphasis in original). Exclusivity is an essential qualifier, and thus severely limits the activities that would fall under it. *Id.* citing <u>Rendell-Baker</u>, *supra* at 842. The purpose of this is that it is meant to prevent or counteract a state's attempt to avoid responsibility by delegating central functions to private parties. *Id.* citing <u>Perkins v. Londonderry Basketball Club</u>, 196 F.3d 13, 18-19 (1st Cir. 1999).

4.13   Under the state compulsion test, state action will be satisfied when a plaintiff demonstrates that the state has exercised coercive power or has provided such significant encouragement, overtly or covertly, that the challenged conduct must be attributed to the state. <u>Grapentine v. Pawtucket Credit Union</u>, 755 F.3d 29, 33 (1st Cir. 2014). Mere approval or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the Fourteenth Amendment. <u>Blum v. Yaretsky</u>, 457 US 991, 1004 (1982) citing <u>Flagg Bros., Inc. v. Brooks</u>, 436 US 149, 164-165 (1978).

4.14   The nexus/joint action test holds that a private party can be held to be a state actor when an examination of the totality of the circumstances reveals that the state has so far insinuated itself into a position of interdependence with the private party that it is a joint participant in the challenged activity. <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 5 (1st Cir. 2005) citing <u>Bass v. Parkwood Hosp.</u>, 180 F.3d 234, 242 (5th Cir. 1999).

### 2. Analysis

4.15 The Complaint alleges that the UIA, **who is a labor union, not a state actor**, is liable under Section 1983 because they acted to deprive them of their federal rights. However, Cruz has failed to allege at any point any action by the UIA that would constitute a violation of his First Amendment rights under the holding of Abood. He has not alleged any specific action that has been used to force ideological conformity or otherwise impair his free expression.

4.16 Furthermore, Cruz contends that the UIA has acted under color of state law simply by citing local laws that allow the existence of closed shop unions and which make viable the collection of union dues and facilitate the operation of the union. **Docket 1**, ¶¶ 11, 12, 13 and 15. In terms of being a state actor it is evidently clear that the UIA does not carry out functions or exercise powers that are traditionally reserved exclusively to the state. Nor has Cruz alleged anything to that effect.

4.17 With regards to the remaining tests, Cruz has not alleged any specific instance of ideological spending which would constitute a violation of his First Amendment. Cruz does not allege any coercive action on part of the state beyond the fact that PRASA and UIA constitute a closed shop labor union which is a condition permitted by law under the National Labor Relations Act ("NLRA"). The NLRA explicitly recognizes the legality of Closed Shops in §8(a)(3) where it states:

> [N]othing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) **to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later,** (i) if such labor organization is the representative of the employees as provided in section 159(a) of this

title, in the appropriate collective-bargaining unit covered by such agreement when made…

29 U.S.C. §158 (emphasis supplied).

4.18 Moreover, compulsory affiliation with a union does not, without more, violate the First Amendment rights of employees. *See* Lehnert v. Ferris Faculty Ass'n, 500 US 507, 517 (1991). *See also* Abood v. Detroit Board of Education, *supra,* recently affirmed by Friedrichs v. California Teachers Association, 136 S. Ct. 1083 (2016) (judgment affirmed by an equally divided court). An employee's free speech rights are not unconstitutionally burdened because the employee opposes positions taken by a union in its capacity as collective-bargaining representative. Lehnert, *supra* at 588. The Supreme Court has held that although this might interfere with First Amendment rights, such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress. *Id.* Ultimately, "[i]t has long been settled that such interference with First Amendment rights is justified by the governmental interest in industrial peace." Ellis v. Brotherhood of Railway & Steamship Clerks, 466 US 435, 455-56 (1984).

4.19 Finally, Cruz's Complaint likewise fails the nexus/joint action test as well. The Complaint does not specifically allege in what way the state or PRASA have so far insinuated themselves into a position of interdependence with the UIA which would convert it into a state actor. Undoubtedly the UIA and PRASA have traditionally held conflicting roles, for them to be considered interdependent at this point would be inconsistent. Furthermore, the actual negotiation of the CBA is not an insinuation of PRASA into the UIA, it is literally a negotiation in which both parties have different objectives and priorities.

### C. Abood's constitutionality

4.20    Cruz also advocates for the overruling of the Supreme Court decision in Abood v. Detroit Board of Education, *supra*, and for the Honorable Court to declare unconstitutional the UIA and PRASA's practice of collecting dues for the costs of collective bargaining, contract administration, and grievance adjustment from dissenting members, **Docket 1**, ¶¶ 2 and 51. However, this argument should not be entertained by the Court as Abood safeguards a considerable issue of public interest and has survived a myriad of challenges in which it has been consistently upheld by the Supreme Court.

4.21    The Supreme Court has unanimously described Abood as "set[ting] forth a general First Amendment principle." Locke v. Karass, 555 U.S. 207, 213 (2009). Furthermore, Abood's effect extends beyond the labor-relations context. The Supreme Court has relied on Abood to decide the constitutionality of compulsory fees in other contexts beyond labor relations in which organizations collect fees to fulfill public objectives. *See*, Keller v. State Bar of California, 496 U.S. 1, 16 (1990) (state bar fees); Board of Regents v. Southworth, 529 U.S. 217, 230 (2000) (mandatory student association fees); Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 558 (2005) (agricultural marketing programs). As mentioned earlier, the Supreme Court has reaffirmed the main holding of Abood several times. *See* Ellis v. Brotherhood of Ry. Clerks, 466 U.S. 435 (1984); Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986) (unanimous); Lehnert v. Ferris Faculty Ass'n., 500 U.S. 507 (1991); Davenport v. Washington Educ. Ass'n, 551 U.S. 177 (2007) (unanimous in relevant part); Locke, 555

U.S. 207 (unanimous); Friedrichs v. California Teachers Association, 136 S. Ct. 1083 (2016) (judgment affirmed by an equally divided court).

  4.22 Abood's holding is consistent with the "crucial" constitutional distinctions "between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 598 (2008) (quoting Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 896 (1961)) (alteration in original). The Supreme Court has long recognized, "the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" NASA v. Nelson, 562 U.S. 134, 148 (2011) (quoting Engquist, 553 U.S. at 599).

  4.23 The Supreme Court has reaffirmed Abood's rationale that "the government interest in labor peace is strong enough to support an 'agency shop' notwithstanding its limited infringement on nonunion employees' constitutional rights." Chicago Teachers Union v. Hudson, 475 U.S. 292, 302-03 (1986) (footnote omitted); see also Lehnert, *supra* (unanimously reaffirming Abood's basic holding that employees may be required to pay their share of the expenses of the exclusive representative's collective-bargaining activities); Davenport v. Washington Educ. Ass'n, 551 U.S. 177 (2007) (same); Locke, *supra* (unanimous). In light of the Supreme Court's decisions regarding Abood, it is evidently clear that the case holds an important place within our legal system. In light of this it would be an error to overrule the holding of Abood after it has become an integral part in the interpretation of the First Amendment.

### D. Cruz's *Hudson* rights

4.24   Act 333 of September 16th, 2004 contains the Bill of Rights of Members of

Organized Labor, 29 L.P.R.A. § 100a, which establishes the following:

> **To guarantee free association and participation for all persons within a labor organization**, the following are hereby declared to be protected rights and prerogatives of high public interest for all labor organization members:
>
> (1) The right to elect by direct, individual and secret vote the directors of the labor organization on all levels provided by the pertinent charter and/or bylaws as subject to election by the members of the organization.
>
> (2) The right to nominate candidates to directing offices and positions and to aspire to any elective office or position in the organization, if in compliance with the requirements established by regulations pursuant to law to run for and aspire to a candidacy.
>
> (3) The right to effective participation in the affairs and activities of the organization and to the free expression of ideas, arguments and opinions on any matters concerning the labor organization.
>
> (4) The right to be consulted with respect to the establishment, increase or modification of membership dues and/or the deduction of contributions, donations and/or special or extraordinary apportionments for fixed or provisional terms through direct, individual and secret vote in assemblies and/or special referendums convened for such purposes and duly supervised by the Department of Labor and Human Resources.
>
> (5) The right to have the disciplinary procedures of the organization in compliance with the due process of law including, among other rights, the notification of specific charges in writing; the opportunity to a defense, per se or by a representative, and the opportunity to present witnesses or documents for their defense in a hearing.
>
> (6) The right to be exempted from or protected against sanctions, penalties or acts of undue pressure, coercion, persecution, reprisals or disciplinary measures for establishing or filing any grievances or legal procedures against the labor organization or any of its representatives, directors or employees before any administrative, judicial or legislative forum, for matters, conduct or activities liable to prosecution, hearing, settlement and/or investigation for it being understood in good faith that they have been carried out against the applicable laws, norms or regulations of the organization, or for appearing as a witness in any

proceeding held in any of the aforementioned forums to which the member has been duly summoned to appear.

(7) The right to receive a copy of the charter and bylaws of the labor organization and of the collective bargaining agreements, letters or contract agreements negotiated and executed with the employer and if so requested, a copy of any special agreement or stipulation granted as a consequence of any negotiation with the employer other than the collective bargaining agreement negotiation, or the letter or contract agreement.

**(8) The right to receive a financial report of the economic and financial activities and operations of the organization signed by the treasurer of the organization on or before August 20 of each year, including a report certified by a certified public accountant on the financial status of the organization from the beginning to the end of the fiscal year, which begins July 1 and ends June 30 of each year. These reports shall be accompanied by a separate list of all expenses, disbursements or investments over $2,000.00, describing the purpose of the expense, disbursement or investment and the salary, per diems, travel expenses or special compensations received by the directors, employees, advisors or consultants of the organization.**

(9) The right to examine the books, accounts, money orders, checks, documents and reports pertaining to the economic and financial operations of the organization at a reasonable time and place with prior notification and agreement on the time and place, and the right to obtain a copy of any document of interest, after payment of a modest and reasonable amount to cover the duplication costs for the requested copies. The labor organization shall maintain all the economic and financial documents of its operations for a minimum of six (6) years.

(10) The right to claim that the secrecy and confidentiality of the identity of any member of an organization who provides information which contains data that leads or may lead to a legal, administrative or judicial investigation for violations of this subchapter be maintained and protected for as long as the investigation continues.

29 L.P.R.A. § 100a (emphasis supplied)

4.25   Furthermore, Act 333, 29 L.P.R.A. § 100b, also states the following:

**Jurisdiction is hereby conferred to hear and resolve grievances or violations of the Bill of Rights of employee members of labor**

>
> **organizations to the Labor Relations Board in the case of public sector employees and labor organizations under its jurisdiction**, pursuant to the provisions in §§ 61—76 of this title, and to the Public Service Labor Relations Commission in the case of employees and labor organizations under its jurisdiction, pursuant to §§ 1451 et seq. of Title 3, and those labor organizations or associations called *bona fide*, created pursuant to § 702 of Title 3 and § 4551nt of Title 21, and those labor organizations that are not covered by the aforementioned §§ 61—76 of this tile.
>
> The grievances of employees for violations of this subchapter shall be filed within thirty (30) days of the occurrence of the violation of any of the rights conferred by this subchapter, or of the employee becoming aware of the violation, and shall be heard and considered by the aforementioned entities, pursuant to the procedures established for hearing and [elucidating] illegal work practices by the labor organizations provided in the aforementioned laws that govern the functions and prerogatives of such quasi-judicial entities.

29 L.P.R.A. § 100b (emphasis supplied)

4.26  Plaintiff asks the Court to enter a declaratory judgment pursuant to 28 USC § 2201 and Federal Rule of Civil Procedure 57, declaring that (i) 29 L.P.R.A. § 69(1)(c) is unconstitutional insofar as it authorizes UIA and PRASA and other employers and labor organizations to enter into all union agreements and maintenance of membership agreements; (ii) that UIA and PRASA's CBA is unconstitutional insofar as it authorizes UIA and PRASA to force Cruz and other employees to maintain union membership as a condition of their employment; (iii) that 29 L.P.R.A. §§ 69(1)(b)-(c) and 84(4) are unconstitutional insofar as they authorize UIA and PRASA and other employers and labor organizations to require and seize dues from the wages of employees who resign from union membership. **Docket 1**, p. 21.

4.27  However, Plaintiff consciously omits that Puerto Rico's legal framework does conform to Abood's and Hudson's holding insofar there is a specific Bill of Rights

that in order to ensure any union members' free association rights, among several, in section 8 establishes the following:

> **(8) The right to receive a financial report of the economic and financial activities and operations of the organization signed by the treasurer of the organization on or before August 20 of each year, including a report certified by a certified public accountant on the financial status of the organization from the beginning to the end of the fiscal year, which begins July 1 and ends June 30 of each year. These reports shall be accompanied by a separate list of all expenses, disbursements or investments over $2,000.00, describing the purpose of the expense, disbursement or investment and the salary, per diems, travel expenses or special compensations received by the directors, employees, advisors or consultants of the organization.**

Not only does the Bill of Rights compel the union to meet the economic disclosure request, it also provides for an **independent forum**, the local Labor Relations Board, in which to litigate said request. Plaintiff's declaratory judgment and injunctive request is silent as to this legal framework, and as such the Complaint should be dismissed. Furthermore, Plaintiff failed to file any grievance before this forum, as provided by local law.

## V. Conclusion

5.1 Ultimately the present complaint has a fatal flaw as it has not alleged an example of ideological spending of union dues on part of the UIA. As such Cruz has failed to allege a violation of his First Amendment right under the holding of Abood, *supra*. Furthermore, the UIA is not a state actor under 42 USC § 1983 under any of the three tests required by the First Circuit. The UIA does not carry out a role which is traditionally reserved to the state, nor has Cruz presented allegations of coercion on part of the state, and there are no specific allegations as to how the state has so far insinuated itself into the UIA to convert it into a state actor. Furthermore, Plaintiff has

failed to mention the legal framework provided by local law that conforms to the rights claimed under Hudson, *supra*. As such the Complaint does not merit this Court's consideration and the Court should dismiss it.

WHEREFORE, defendant Unión Independiente Auténtica de los Empleados de la Autoridad de Acueductos y Alcantarillados, respectfully requests that this Honorable Court dismiss with prejudice the complaint as to this defendant.

RESPECTFULLY SUBMITTED**.**

In San Juan, Puerto Rico, this 1st day of March 2018.

**I HEREBY CERTIFY**: that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to attorneys of record to their respective e-mail addresses.

**s/ Harry Anduze Montaño**
Harry Anduze Montaño- 114910
**s/ José A. Morales Boscio**
José A. Morales Boscio- 220614
1454 Fernández Juncos Avenue
San Juan, PR 00909
Tel. (787) 723-7171
Fax (787) 723-7278
E-mail handuze@microjuris.com
jmoralesb@microjuris.com

srp

F/HAM/Motions/2189- Motion to Dismiss