# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **REYNALDO CRUZ,** )<br>)<br>    **Plaintiff,** )<br>)<br>            v.      )<br>)<br>**UNIÓN INDEPENDIENTE** )<br>**AUTÉNTICA DE LOS EMPLEADOS** )<br>**DE LA AUTORIDAD DE ACUEDUCTOS** )<br>**Y ALCANTARILLADOS, et al.,** )<br>)<br>    **Defendants.** )<br>_____ ) | **CIVIL NO. 17-2261 (PAD)** |

### BRIEF OF THE AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS AS *AMICUS CURIAE* IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

### STATEMENT OF INTEREST

The American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) files this *amicus* brief in response to the Court's order seeking the parties' input as to why, "in light of *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, No. 16-1466, 585 U.S. __ [138 S. Ct. 2448] (June 27, 2018), . . . the remedies requested in the complaint should not be granted." Order, 3:17-cv-02261, Doc. 55 (June 28, 2018).

The AFL-CIO is a federation of 55 national and international labor organizations with a total membership of over 12 million working men and women, including tens of

1

thousands of members in Puerto Rico.[1]  The American Federation of State, County, and Municipal Employees (AFSCME), the defendant in *Janus*, is an AFL-CIO affiliate.  And, AFSCME and other AFL-CIO-affiliated unions are currently litigating post-*Janus* cases in several different courts.  *See*, *e.g.*, *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018), *appeal docketed*, No. 18-36087 (9th Cir., Dec. 28, 2018); *Seidemann v. PSC*, No. 18-cv-09778 (S.D.N.Y., filed Oct. 24, 2018).  The AFL-CIO is thus uniquely qualified to explain to the Court how *Janus* relates to this case, as well as how this case differs in meaningful ways from *Janus* and other cases being litigated in the wake of *Janus*.[2]

## STATEMENT

The Puerto Rico Labor Relations Act, Law No. 130-1945, 29 L.P.R.A. § 62 *et seq.* (PRLA), covers, *inter alia*, employees of "corporate instrumentalities of the government of Puerto Rico."  29 L.P.R.A. § 63(2).  The Act expressly permits unions and covered employers to enter into "all-union shop contracts" and "maintenance of membership agreements."  *Id.* § 69(1)(c).  An "all-union shop contract" is defined as "an agreement between an employer and the representative of his employees in a collective bargaining

---

[1] However, neither the defendant, the Unión Independiente Auténtica de los Empleados de la Autoridad de Acueductos y Alcantarillados (UIA), nor the intervenors, the Office and Professional Employees of the Public Buildings Authority Union and the State Insurance Fund Employees Union, are affiliated with the AFL-CIO at the national level or in Puerto Rico.

[2] We do not address the UIA's arguments concerning whether PRASA is a public employer for purposes of the First Amendment or the arguments raised by the intervenor unions regarding the interplay between Puerto Rico's constitutional and statutory framework and the U.S. Constitution, as those issues have been fully briefed by the parties.

unit whereby it is required as a condition of employment, that all the employees in such unit be members of a single labor organization." *Id.* § 63(7).  A "maintenance of membership agreement" is defined as an "agreement between an employer and the representatives of his employees in a collective bargaining unit whereby it is required as a condition of employment, of all the employees who are members of the union at the time of the execution of the agreement or at other times thereafter, and under such other conditions as may be specified in the agreement, that they maintain themselves in good standing as members of the union during the life of the contract." *Id.* § 63(8).

According to the allegations in the complaint, the UIA and the Puerto Rico Aqueduct and Sewer Authority (PRASA) negotiated a collective bargaining agreement for the period 2011 through 2015 ("the 2011 CBA") that contains both union membership requirements.  The 2011 CBA includes an "all-union shop" requirement that states that all bargaining unit employees who are not union members at the time the agreement is signed must become union members within 14 days from that date and that all new employees must become union members within 14 days of beginning work.   Compl. ¶ 21 (citing CBA Art. VI (1) and (2)).  The 2011 CBA also contains a "maintenance of membership" requirement stating that employees must maintain their union membership while the CBA remains in effect as a condition of employment.  Compl. ¶ 29 (citing CBA Art. VI (5)).

Plaintiff Reynaldo Cruz is employed by PRASA in a position covered by the 2011 CBA.  Comp. ¶ 7.  In October 2016, Cruz wrote to the UIA and PRASA, "resigning from union membership, and objecting to the payment of the portion of union dues that are

3

used for UIA's political, ideological, and other nonbargaining spending." Compl. ¶ 36. In December 2016, "UIA rejected Cruz's request to resign from union membership and pay only that portion of dues used for union expenditures related to collective bargaining," explaining that "if [Cruz] wishes to cease his membership in UIA and stop paying the dues, he must submit a letter resigning his employment with PRASA and/or seek a position outside of the collective bargaining unit." Compl. ¶ 37. PRASA similarly "rejected Cruz's request to resign from union membership and pay only that portion of dues used for union expenditures related to collective bargaining." Compl. ¶ 38.

## ARGUMENT

To understand the significance of *Janus* to this case, it is necessary to first revisit *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977), the case *Janus* overruled. *Abood* held that a public employee cannot be required to join a union as a condition of employment. 431 U.S. at 220. Rather, the most that could be required of a public employee who objected to the payment of full union dues after *Abood* was the payment of an "agency fee" equal to his or her fair share of union expenditures "germane to [the union's] duties as collective-bargaining representative." *Id.* at 235-36.

*Janus* involved a CBA negotiated pursuant to a state law that, consistent with *Abood*, required that "[e]mployees who decline to join the union are not assessed full union dues but must instead pay what is generally called an 'agency fee,' which amounts to a percentage of the union dues." *Janus*, 138 S. Ct. at 2460 (describing Illinois Public Labor Relations Act). It was against this backdrop that *Janus*, going further than *Abood*,

4

held that requiring a public employee to pay even an agency fee as a condition of employment "violates the free speech rights of nonmembers." *Ibid*. *Janus*, in other words, did not address a statute that requires a public employee to do *more* than pay an agency fee as a condition of employment – *e.g.*, to join the union and pay full membership dues.

Because of the significant differences between the collective bargaining laws – and the CBAs negotiated thereunder – at issue in this case and in *Janus*, it is not surprising that the run of post-*Janus* cases raise very different legal issues than are presented here. Most post-*Janus* cases involve union defendants who, in reliance on state laws enacted against the legal backdrop of *Abood*, charged an agency fee to nonmembers prior to *Janus*. The basic legal claim put forth by the plaintiffs in those cases is that by requiring nonmembers to pay agency fees prior to *Janus*, the unions violated 42 U.S.C. § 1983. *See, e.g.*, *Danielson*, 340 F. Supp. 3d at 1085-87.

That is a very different legal issue than is raised by the plaintiff in this case, against the backdrop of a very different legal regime. Unlike the Illinois law at issue in *Janus*, the PRLA, enacted long before *Abood* was decided,[3] permits mandatory union membership and fee requirements. In that regard, Cruz alleges simply that, "[p]ursuant to the CBA and acting in concert under color of state law, UIA and PRASA maintain and enforce compulsory union membership requirements that force Cruz, against his will, to remain a UIA member and adhere to the union's rules and requirements, which restrain

---

[3] The PRLA was enacted in 1945 and has not been amended in relevant part since that time.

5

Cruz's free exercise of First Amendment freedoms in violation of the U.S. Constitution." Compl. ¶ 70. Such a claim is unaffected by *Janus*'s invalidation of agency fee requirements.

## CONCLUSION

The Court should decide this case under the longstanding legal framework concerning mandatory union membership and fee requirements set forth in *Abood*. It is unnecessary for the Court to address unrelated questions raised by laws like that at issue in *Janus* itself – laws that, unlike the PRLA, permitted a union to charge nonmembers only an agency fee – that are the subject of post-*Janus* litigation in other courts.

Dated: February 20, 2019

Respectfully submitted,

/s/ Manuel A. Rodríguez Banchs
USDC-PR No. 216208
Rodríguez Banchs, CSP
Attorneys at Law
P.O. Box 368006
San Juan, PR 00936-8006
(787) 764-8896
manuel@rodriguezbanchs.com

Harold C. Becker*
Matthew J. Ginsburg*
American Federation of Labor and
Congress of Industrial Organizations
815 Sixteenth Street, NW
Washington, DC 20006

*Application for admission *pro hac vice* to be filed.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this same date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all the attorneys of record.

S/ Manuel A. Rodríguez Banchs
**MANUEL A. RODRÍGUEZ BANCHS**
**USDC-PR No. 216208**
