# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REYNALDO CRUZ,<br><br>Plaintiff,<br><br>v.<br><br>UNIÓN INDEPENDIENTE AUTÉNTICA DE LOS EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, THE PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, AND HON. WANDA VÁZQUEZ GARCED, in her official capacity as Governor of the Commonwealth of Puerto Rico,<br><br>Defendants. | Civil Case No. 17-2261-PAD |

## PLAINTIFF REYNALDO CRUZ'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure, Rule 56 and Local Rule Cv. 56, Plaintiff Reynaldo Cruz ("Cruz"), by and through his undersigned attorneys, hereby moves for Summary Judgment on Count One (Compl. ¶¶61-73) (compulsory union membership requirements), Count Two (Compl. ¶¶74-90) (compulsory union fee requirements), and Count Three (Compl. ¶¶91-100) (procedural rights violations), of his Complaint against Defendants Unión Independiente Auténtica de Los Empleados de la Autoridad de Acueductos y Alcantarillados ("UIA"), the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), and the Hon. Wanda Vázquez Garced, in her official capacity as Governor of the Commonwealth of Puerto Rico ("the Governor").[1]

---

[1] Hon. Ricardo Antonio Rosselló Nevares was the Governor when this case was filed on October 26, 2017, until August 2, 2019, when the Hon. Wanda Vázquez Garced became Governor of Puerto Rico. Pursuant to Fed. R. Civ. P. 25(d), the substitution of Governor Wanda Vázquez Garced, in her official capacity, is automatic.

In support of his Motion for Summary Judgment, Cruz relies on this incorporated Memorandum of Law, as well as the Statement of Material Facts, and Appendix of Record Citations filed contemporaneously herewith.

## INTRODUCTION

The Court should grant Cruz's Motion for Summary Judgment and award him all requested relief. UIA and PRASA, acting in concert as state actors under color of the PRLA, deprived Cruz of his rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments to the U.S. Constitution by: (I) requiring Cruz to be a full-fledged union member and pay full union dues as a condition of employment; and (II) requiring Cruz to pay compulsory union fees for collective bargaining, contract administration, grievance adjustment, and other administrative expenses.

When Cruz attempted to resign from union membership on October 26, 2016, UIA and PRASA forced Cruz to continue his membership and pay compulsory union dues and fees in violation of his First and Fourteenth Amendment Speech and Association rights. *See e.g. Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018); *Harris v. Quinn*, 134 S. Ct. 2618 (2014)*; Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298 (2012); *Rutan v. Republican Party*, 497 U.S. 62, 76 (1990); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *Puerto Rican Ass'n of Professors v. Commonwealth of P.R.*, 2019 WL 2185047 (P.R. Cir. Feb. 28, 2019). Thus, UIA and PRASA are liable to Cruz for their deprivation of his constitutional and civil rights under 42 U.S.C. §§ 1983 and 1988.[2]

---

[2] Previously, Cruz demonstrated that PRASA and UIA are state actors who, acting in concert and under color of the PLRA, deprived Cruz of his constitutional rights. *See* Cruz Resp. to UIA Mot. to Dismiss, ECF No. 46, pp.3-6 (Mar. 15, 2018); Cruz Resp. to UIA Mot. for Compliance with Order to Show Cause, ECF No. 77, pp.3, 14 (Sep. 6, 2018).

The Puerto Rico Labor Relations Act ("the PRLA"), 29 L.P.R.A. § 61 *et seq*., also subjects Cruz to the deprivation of his First and Fourteenth Amendment rights by giving public-sector unions and employers, like UIA and PRASA, unconstitutional authority to adopt and enforce compulsory membership, dues, and fee requirements that compel speech and association. Specifically, the PRLA vests public-sector unions and employers with the authority to adopt and enforce "maintenance of membership agreements" and "all-union shop contracts." 29 L.P.R.A. §§ 69(1)(c) and 63(7)-(8). The PRLA also gives public-sector unions and employers power to seize compulsory union dues and fees from their employees' pay without their voluntary affirmative consent and authorization, and their knowing and intelligent waiver of constitutional rights. 29 L.P.R.A. §§ 69(1)(b) and 84(4).

The CBA also subjects Cruz to the deprivation of his First Amendment rights. UIA and PRASA, acting in concert as state actors and under color of the PRLA, adopted and enforced CBA Articles VI (1), (2), (4), and (5), and Article VII, which require Cruz to be a full-fledged union member as a condition of employment and allow UIA and PRASA to seize full union dues, fees, and fines from Cruz's wages, despite his resignation from union membership and objections to paying such dues and fees. Furthermore, the CBA Article VI (4) requires Cruz and other PRASA employees to support and participate in UIA's ideological activities and objectives, without regard to their freedom of thought, expression, conscience, assembly, and self-organization. *See West Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("[F]reedom of thought … includes both the right to speak freely and the right to refrain from speaking at all.").

The Court should grant Cruz's Motion for Summary Judgment on all claims, and award him compensatory, declaratory, and permanent injunctive relief as set forth herein and in the

Complaint. The Court should grant Cruz's Motion for Summary Judgment on Count One because it is unconstitutional to force employees to become union members, and pay union dues as a condition of employment. The Court should grant Cruz's Motion for Summary Judgment on Count Two because it is also unconstitutional to force employees to pay compulsory union fees for the costs of collective bargaining, contract administration, and grievance adjustment, particularly when such fees are seized without the employees' valid consent and authorization.

The Court does not need to reach Cruz's alternative claims in Count Three because the U.S. Supreme Court's *Janus* decision confirms that, in accordance with Count Two, Cruz should receive all union dues and fees taken from him after his membership resignation.[3] Count Three alleged that UIA and PRASA violated Cruz's First Amendment rights under *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986), which case established procedural safeguards to protect employees from also being forced to subsidize union nonbargaining expenditures. Compl. ¶¶91-100. While this case was pending, the U.S. Supreme Court recognized that public-sector unions and employers cannot require employees to pay *any* union fees as a condition of employment because all such fees are inherently political and unconstitutional. *See Janus*, 138 S. Ct. at 2472-73, 2478. The Supreme Court's reasoning in *Janus* shows that this Court should grant Cruz's Motion for Summary Judgment on Count Two and award him all requested relief, including the full refund of all union dues and fees taken since October 26, 2016, in which case Count Three becomes irrelevant.[4]

---

[3] Cruz challenged the constitutionality of compulsory union fees in Count Two, and *Janus* vindicates his claims, which were already pending when *Janus* was decided. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752-54 (1995) (reliance on prior case law insufficient to deny retroactive application of legal rule); *Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 809 (9th Cir. 1991); *Lowary v. Lexington Local Bd. of Educ.*, 903 F.2d 422, 427-28 (6th Cir. 1990); *see also* Cruz Resp. to PRASA Mot. in Compliance, ECF No. 78, pp5-8.

[4] *See also id*. 138 S. Ct. at 2480 (overruling *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and criticizing it for failing to anticipate "'the magnitude of practical administrative problems that would result in attempting to classify public-sector union expenditures as either 'chargeable' … or 'nonchargeable'" or "foresee the practical problems that would face objecting nonmembers.'") (quoting *Harris*, 573 U.S. at 636-37).

## SUMMARY OF FACTS

There are no disputes of material fact. Plaintiff Reynaldo Cruz is and has been a plant operator employed by PRASA since November 1992 in the collective bargaining unit covered and defined by Article V of the CBA. (SOF ¶1).[5] UIA and PRASA, acting under the color of the PRLA, negotiate collective bargaining agreements governing PRASA employees' terms and conditions of employment. (SOF ¶¶8, 3-6). On or about December 2, 2011, UIA and PRASA signed a collective bargaining agreement entitled "Convenio Colectivo 2012-2015," which entered into effect on January 1, 2012, with a termination date of December 31, 2015 ("the CBA"). (SOF ¶8). The CBA was extended beyond its original termination date, and continued in full force and effect from December 31, 2015, through the present. (SOF ¶9).

Pursuant to their authority under the PRLA, UIA and PRASA adopted and enforced multiple compulsory membership, dues, and fee requirements in CBA Article VI (1), (2), (4), (5), and Article VII. (SOF ¶¶33-38, 3-6). UIA and PRASA claimed authority to adopt and enforce these CBA provisions from the PRLA's authorization of "all-union agreements," "maintenance of membership agreements," and automatic union dues deduction agreements in 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c), and 84(4). (SOF ¶¶33-38, 3-6).

CBA Article VI (1) and (2) state that it will be a condition of employment for all bargaining unit employees that are not union members at the time of the CBA's signing to become members within 14 days from the time of signing, and for all new bargaining unit employees to become union members within 14 days from the date they begin work. (SOF ¶11). Shortly after Cruz began working with PRASA in 1992, he became a member of UIA. (SOF ¶39).

---

[5] The Statements of Material Facts in Support of Cruz's Motion for Summary Judgment are cited to as "SOF ¶__."

CBA Article VI (4) establishes that whether an employee attains or maintains "union member" status will be determined according to the UIA Constitution, which requires PRASA employees to be forced union members, swear an oath of loyalty to the union, and attend and participate in all of the union's marches, pickets, strikes, and work stoppages irrespective of their own ideological beliefs. (SOF ¶¶12-17, 20-26). If they do not, those PRASA employees are subject to union disciplinary procedures, suspension of employment or contractual benefits, and termination from employment. (SOF ¶¶18-19, 21-26).  CBA Article VI (5) further provides that PRASA will deduct union fines from employees, and will temporarily suspend employees' benefits under the CBA, employment, and salary, or will fire any employee who does not become a UIA member, who loses his status as a member, or who has been found guilty of violating the UIA Constitution. (SOF ¶30).

UIA and PRASA's CBA also compels all employees to surrender union dues automatically without regard for each employee's consent and authorization to union payments. (SOF ¶¶11, 14, 16, 30-38, 63-64). Under the CBA Article VII, PRASA also agrees to deduct automatically from each employee's salary the regular dues, initiation fees, and special assessments that UIA and/or its local chapters have fixed for its members in accordance with the UIA Constitution. (SOF ¶31). CBA Article VII, Section 4 provides that the dues deductions established in Article VII will be remitted by PRASA to the UIA within 10 days of the deduction. (SOF ¶32). Shortly after Cruz began his employment with PRASA in 1992, UIA and PRASA required him to become a union member and started collecting mandatory full union dues from his pay, as had been their practice with employees under their "union-security" clause since the union's December 1967 certification. (SOF ¶¶61-62, 81, 83-84); (SOF ¶¶1, 39).

On October 26, 2016, Cruz sent letters to UIA and PRASA resigning from union membership. (SOF ¶¶40-50). On December 1, 2016, UIA sent Cruz a letter rejecting Cruz's union membership resignation. (SOF ¶¶51-54). On or about December 13, 2016, PRASA also sent Cruz a letter rejecting his union membership resignation. (SOF ¶¶57-60). Despite Cruz's resignation, UIA and PRASA forced Cruz to maintain full union membership and continued seizing full union dues from his pay as a condition of employment without his voluntary affirmative consent and authorization until on or about July 6, 2018. (SOF ¶¶61-64). Cruz never authorized forced fee deductions, and UIA and PRASA never obtained or possessed any membership agreements, dues deduction authorizations, or other documents or communications signed by Cruz, authorizing PRASA to deduct or assign union dues to UIA. (SOF ¶¶61-64).

Prior to filing this action, Cruz made repeated efforts to resolve his claims with UIA and PRASA, explaining U.S. Supreme Court precedent and his First Amendment rights. (SOF ¶¶55-56, 65-72). Yet, UIA and PRASA refused to recognize Cruz's rights. (SOF ¶¶73-86, 88-93). UIA and PRASA contended that, under the PRLA and CBA, Cruz had no First Amendment rights to refrain from union membership. (SOF ¶¶52, 59-60, 73-81). UIA's and PRASA's refusal to give credence to clearly established Supreme Court precedent required Cruz to enforce his constitutional rights in federal court. On October 26, 2017, Cruz filed this lawsuit, alleging that Defendants violated his constitutional rights by requiring him, as a condition of employment, to maintain full union membership and pay full union dues[6] and by requiring him to pay compulsory union fees.[7] *See* ECF No.1.

On or about July 6, 2018, PRASA stopped deducting union dues from Cruz's pay. (SOF ¶¶62, 82, 84). PRASA issued memoranda, on or about July 18, 2018, stating that public employees

---

[6] *See* Compl. ¶¶61-73 (Count One).
[7] *See* Compl. ¶¶74-90 (Count Two).

who do not want to be union members can submit a membership resignation form. (SOF ¶82). Meanwhile, in the aftermath of the U.S. Supreme Court's decision in *Janus*, UIA continued to mislead employees about their rights, insisting that *Janus* does not apply to employees covered by the PRLA, that the decision is not applicable to workers who are already union members, and that it does not establish a right to resign from union membership.[8] (SOF ¶86). UIA illegally threatened employees that they will have to pay for their own legal representation if their employer fires them or takes other disciplinary action against them, effectively disclaiming the union's duty of fair representation. (SOF ¶¶85).

Even after the U.S. Supreme Court decided *Janus* and PRASA stopped dues deductions, UIA continued rejecting Cruz's First Amendment arguments as well as *Janus*'s applicability to this case. UIA continued to argue that, under the PRLA and the CBA, unions and employers can adopt and enforce all of their compulsory union membership, dues, and fees requirements. *See* ECF No. 43 (UIA March 1, 2018 Mot. to Dismiss); ECF No. 52 (UIA April 26, 2018 Reply on Mot. to Dismiss); ECF No. 65 (UIA August 8, 2018 Mot. in Compliance with Order to Show Cause); ECF No. 89 (UIA September 26, 2018 Reply on Mot. in Compliance). UIA continued to defend its maintenance of membership and compulsory fee provisions even as recently as the Court's February 21, 2019 hearing on its Order to Show Cause and the union's motion to dismiss. *See* ECF No. 141.

The CBA's compulsory membership, dues, and fee requirements in CBA Article VI (1), (2), (4), (5), and Article VII continue without modification (SOF ¶¶8-9), and the PRLA's

---

[8] Other union leaders publicly took the same position as UIA. For instance, the Vice President of UTIER, which labor organization represents Puerto Rico Electric Power Authority workers, and is also governed according to the same PRLA as UIA, declared that the *Janus* ruling only applies to entities where union membership is not mandatory and there are separate fees for workers who do not want to join. UTIER's Vice President publicly indicated that membership in that organization is also mandatory as a condition of employment. (SOF ¶¶87).

compulsory membership and fee requirements in 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c), and 84(4), have also continued without amendment. Now that the Court has denied all motions to dismiss and completed briefing of the Order to Show Cause in light of *Janus*, the Court should grant Cruz's Motion for Summary Judgment on Count One and Count Two, and award Cruz all the relief requested in the Complaint. *See* ECF Nos. 55, 64, 65, 70, 76-79, 89, 91 141, 144.

## LEGAL STANDARD

The Court should grant Cruz's Motion for Summary Judgment because there are no disputes of material fact. Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(a), (c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). ("[T]he substantive law will identify which facts are material."); *Lockridge v. Univ. of Maine Sys.*, 597 F.3d 464, 469 n.3 (1st Cir. 2010) ("Material facts are those that might affect the outcome of the suit." (quoting *Anderson*, 477 U.S. at 248)). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file and any accompanying affidavits that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The record demonstrates that Cruz is entitled to summary judgment on all of his claims.

## ARGUMENT

### I.   Compulsory union membership requirements violate Cruz's First Amendment rights.

The Court should grant Cruz summary judgment on Count One because UIA and PRASA deprived him of his First and Fourteenth Amendment rights by forcing him to be a full-fledged

union member and pay full union dues as a condition of employment. The First Amendment guarantees public-sector employees' rights not to support or associate with unions. *See Janus v. AFSCME Council 31*, 138 S. Ct. 2448, 2463 (2018) ("The right to eschew association for expressive purposes is likewise protected."); *Harris v. Quinn*, 134 S. Ct. 2618 (2014)*; Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 309 (2012) ("[T]he ability of like-minded individuals to associate for the purpose of expressing commonly-held views may not be curtailed."); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association … plainly presupposes a freedom not to associate."); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 233 (1977);[9] *Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U.S. 1, 12 (1986) ("[F]orced associations that burden protected speech are impermissible."); *Debont v. City of Poway*, 1998 WL 415844 (S.D. Cal. Apr. 14, 1988) (recognizing that plaintiff is "likely to succeed on his First Amendment claim" where a "maintenance of membership" provision prevented him from resigning from the union and granting a preliminary injunction); *accord McCahon v. Pa. Turnpike Com'n*, 491 F. Supp. 2d 522, 527 (M.D. Pa. Jun. 4, 2007); *Puerto Rican Ass'n of Professors v. Commonwealth of P.R.*, 2019 WL 2185047 *13 (P.R. Cir. Feb. 28, 2019).[10]

Recently, the Puerto Rico Court of Appeals, aptly stated when applying *Janus*:

[T]he truth of the matter is that … the Constitution also protects the fundamental rights of public employees to organize and associate and **to refrain from associating**… It is worth pointing out that the desire of public employees to be associated with a union is not eternal. The willingness of a bona fide labor organization or union to represent the interests of an employee cannot bind or compel an employee who, at one point wanted to be a member, and in the course

---

[9] *See id*. ("[T]he freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments … Equally clear is the proposition that a government may not require an individual to relinquish rights guaranteed him by the First Amendment as a condition of public employment.") (internal citations omitted).

[10] *Puerto Rican Ass'n of Professors*, 2019 WL 2185047 *11 (recognizing that it is in accordance with the fundamental right of freedom of speech and association reiterated in *Janus* that "any public servant who no longer wishes to be a member of a union to be able to disaffiliate and free himself from the statutory and unconstitutional obligation of continuing to pay the dues [beyond resignation]").

of his association lost such interest and no longer wishes to be a member, to remain affiliated.

*Puerto Rican Ass'n of Professors*, 2019 WL 2185047 *13 (emphasis in original).[11]

Here, the compulsory membership requirements that violated Cruz's First Amendment rights arise in the context of (A) UIA and PRASA compelling Cruz to be a union member and pay full dues as a condition of employment (SOF ¶¶11, 14-16, 30-31, 51, 53-54, 57, 59, 60-64, 76, 78, 82-84); and (B) the PRLA, 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c) and 84(4), and the CBA Article VI (1), (2), (4), (5), authorizing "maintenance of membership," "all-union," and mandatory membership dues deduction agreements. (SOF ¶¶33-38, 59-60, 54, 74, 77-78, 80-81).

## A.    UIA and PRASA compelled Cruz to be a union member and pay full union dues as a condition of employment.

UIA and PRASA violated Cruz's constitutional rights by forcing him to be a full-fledged union member and by continuing to seize full dues from him after his membership resignation. The First Amendment protects an employee's right to resign from membership at any time and gives it immediate effect. *See Janus*, 138 S. Ct. at 2463; *Knox*, 132 S. Ct. at 2288; *Roberts*, 468 U.S. at 623; *Abood*, 431 U.S. at 233; *Rutan v. Republican Party*, 497 U.S. 62, 76 (1990); *Debont*, 1998 WL 415844. *See also Pattern Makers*, 473 U.S. at 113; *Puerto Rican Ass'n of Professors*, 2019 WL 218504714 *8 (applying *Janus* and holding that unions and employers must accept, "at

---

[11] The Supreme Court's decisions recognize that requiring "membership" in any sense other than nonmembers' payment of financial core agency fees is illegal under the Railway Labor Act ("RLA") and the National Labor Relations Act ("NLRA"). *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 36 (1998) ("[T]he only 'membership' that a union can require [in the private sector under the NLRA] is the payment of fees and dues."); *id*. at 37 (recognizing that the NLRA allows private sector unions to "negotiate a clause requiring 'membership' in the union" but "an employee can satisfy the membership condition merely by paying to the union an amount equal to the union's initiation fees and dues … the [only] membership that can be required 'as a condition of employment is whittled down to its financial core.'"). *See also* Cruz Resp. UIA Mot. to Dismiss, ECF No. 46, 10, 10 n.4. Maintenance of membership requirements were the *sine qua non* of the "closed shop," and were outlawed decades ago in the private sector. *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 750-770 (1961) (explaining that closed shop and maintenance of membership requirements are prohibited under the RLA); *Pattern Makers v. NLRB*, 473 U.S. 95, 106 n.16, 107 (1985) (same prohibited under the NLRA). *See also Commc'n Workers of Amer. v. Beck*, 487 U.S. 735, 745, 762-63 (1988) (citing *NLRB v. General Motors Corp.*, 373 U.S. 734, 742 (1963)).

any time," revocations of dues deduction authorizations from public employees, without imposing any restrictions on stopping dues, and recognizing this principle as echoing through federal case law and as consonant with freedom of speech and association).

On October 26, 2016, Cruz exercised his First Amendment rights to refrain from union membership by delivering union resignation letters to both UIA and PRASA. (SOF ¶¶40-50). UIA and PRASA rejected Cruz's resignation, informing him that he could not leave the union if he wanted to keep his job. (SOF ¶¶51, 57, 61-62). Thus, UIA and PRASA deprived Cruz of his First Amendment speech and association rights by forcing Cruz to be a union member and seizing full-union dues from his pay as a condition of employment. (SOF ¶¶51, 57, 61-62).

**B.** **UIA and PRASA relied on the PRLA, 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c) and 84(4), and the CBA Article VI (1), (2), (4), (5), and VII, in imposing compulsory union membership requirements.**

UIA and PRASA justified forcing Cruz to maintain union membership based on their authority under the PLRA and CBA. (SOF ¶¶33-38, 54, 59-60, 74, 77-78, 80-81). However, insofar as the PRLA and CBA adopt and enforce the compulsory membership requirements, they also subject Cruz and other employees to the deprivation of their First Amendment rights.

**1.** **The PRLA, 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c), and 84(4) compel Cruz and similarly-situated public employees to become and remain full-fledged union members and pay full union dues in violation of their constitutional rights.**

The PRLA, 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c) and 84(4), are unconstitutional because they vest public-sector unions and employers, like UIA and PRASA, with power to compel Cruz and similarly-situated employees to become and remain union members. U.S. Supreme Court precedent clearly establishes that the government violates public-sector employees' First Amendment rights when it requires them to associate with unions and submit to forced union

membership. *Janus*, 138 S. Ct. at 2463; *Knox*, 132 S. Ct. at 2288; *Roberts*, 468 U.S. at 623; *Abood*, 431 U.S. at 233; *Rutan*, 497 U.S. at 76; *Debont*, 1998 WL 415844.

The PRLA, 29 L.P.R.A. §§ 63(7)-(8), 69(1)(b)-(c) and 84(4), authorize public-sector unions and employers to adopt and enforce union membership requirements and, thus, require all employees to become and remain full-fledged union members and surrender full union dues as a condition of employment. The PRLA, 29 L.P.R.A. § 69(1)(c), gives public corporation employers and unions the power to adopt and enforce "maintenance of membership" and "all union agreements," and to seize full union dues from employees. "Maintenance of membership agreements" authorize public unions and employers to require, as a condition of employment, that "all the employees who are members of the union at the time of the execution of the [collective bargaining] agreement or at other times thereafter, and under such other conditions as may be specified in the agreement … maintain themselves in good standing as members of the union during the life of the contract." 29 L.P.R.A. § 63(8). Similarly, "all-union agreements" authorize unions and employers to require as a condition of employment, that "all the employees in such unit be members of a single labor organization." 29 L.P.R.A. § 63(7).

The PRLA, 29 L.P.R.A. §§ 69(1)(b) and 84(4) further authorize employers to automatically deduct any sum of money from the salary, earnings, or income of an employee for the payment of full union membership dues when such deduction is required by the terms of a collective bargaining agreement. These provisions authorize unions and employers like UIA and PRASA to forcibly extract full union dues from employees, even when they do not authorize or support financial contributions to the union. Forcing employees to pay full union membership dues is another form of compulsory membership requirements that violate employees' First Amendment rights. *See e.g., Elrod v. Burns*, 427 U.S. 347 (1976).

13

The PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c), 63(7)-(8), and 84(4), authorize public-sector unions and employers to compel their employees to become and remain full-fledged union members, and extract from them union dues payments through forced, involuntary deductions. UIA and PRASA invoked the PRLA's unconstitutional authority when they adopted and enforced the CBA Article VI (1), (2), (4), (5), and Article VII, and forced Cruz to continue union membership and forced dues payments even after his October 26, 2016 membership resignation. (SOF ¶¶2, 4, 6, 33-38, 59-60, 54, 74, 77-78, 80-81). The PRLA purports to make these compulsory membership and dues deduction requirements enforceable contrary to the First Amendment to the U.S. Constitution. The Commonwealth gives public-sector unions and employers who adopt "maintenance of membership agreements," "all-union agreements," and "dues deduction agreements," under color of the PRLA, the state's power and imprimatur to enforce these unconstitutional agreements and coerce employees like Cruz to surrender their First Amendment rights.

2.   **The CBA, Articles VI (1), (2), (4), and (5), and require Cruz to become and remain a full-fledged union member and pay full union dues in violation of his constitutional rights.**

The CBA Article VI (1), (2), (4), (5), and Article VII, also compel Cruz, as a condition of employment, to be a full-fledged union member and pay full union dues in violation of his constitutional rights. The First Amendment guarantees public-sector employees' freedoms of speech, association, self-organization, assembly, belief, thought, and conscience, including the freedom to not support or associate with a labor organization. *See e.g., Janus*, 138 S. Ct. at 2463; *Knox*, 132 S. Ct. at 2288; *Roberts*, 468 U.S. at 623; *Abood*, 431 U.S. at 233; *Rutan*, 497 U.S. at 76; *Debont*, 1998 WL 415844.

The CBA Article VI (1), (2), (4), (5), and Article VII, require Cruz and other PRASA employees, as a condition of employment, to remain full-fledged union members and surrender full union dues deductions in violation of their constitutional rights. CBA Articles VI (1) and (2), require Cruz and all other bargaining unit employees to become and remain union members as a condition of employment. (SOF ¶11).

Perhaps most coercive is CBA Article VI (4)'s requirement that the UIA Constitution determines whether PRASA employees have achieved or maintained "union member" status. (SOF ¶12). The UIA Constitution states that all PRASA employees shall only be deemed "union members" under the CBA when they have complied with the UIA Constitution's provisions and the duties imposed therein. (SOF ¶13). CBA Article VI (4) requires all employees to comply with the UIA Constitution *as a condition of employment*. Not only does CBA Article VI (4) subject Cruz and other employees who violate the UIA's Constitution to union discipline, fines, and other penalties, but it also permits UIA to expel them from "union membership," which results in the employee failing to maintain the "union membership as a condition of employment" requirement. (SOF ¶19). CBA Article VI (5) makes this coercive requirement explicit, and expressly states that PRASA will suspend the benefits, employment, and salary of, or fire any employee, that loses his status as a member or has been found guilty of violating the UIA Constitution. (SOF ¶30).

Thus, CBA Article VI (4) and (5) require PRASA employees—like Cruz—to submit to the UIA Constitution's jurisdiction, swear an oath of loyalty to the union, to attend union meetings, to abandon work to attend marches and pickets whenever a march, picket, work stoppage, or strike is ordered, to obey the union's internal rules and policies, and support and participate in the union's political and ideological activities, *all as a condition of employment and receiving their benefits under the CBA*. (SOF ¶¶12-25, 27-29).

The U.S. Constitution does not tolerate such extreme interference in employees' First Amendment rights. *See Janus*, 138 S. Ct. at 2463 ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." (quoting *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)) (emphasis in *Janus*). The Supreme Court has recognized that an employee cannot be discharged under a "union-security" agreement "for failing to abide by union rules or policies with which he disagrees." *See Pattern Makers*, 473 U.S. at 106 n.16.  CBA Article VI (4) and (5)'s demands are so pernicious that it is difficult to comprehend how UIA and PRASA could justify adopting them in their CBA:

> Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned. Suppose, for example, that the State of Illinois required all residents to sign a document expressing support for a particular set of positions on controversial public issues—say the platform of one of the major political parties. No one, we trust, would seriously argue that the First Amendment permits this.

*Janus*, 138 S. Ct. at 2463-64. The CBA plainly coerces Cruz and other PRASA employees to be forced members and surrender their First Amendment freedoms of association, speech, assembly, self-organization, thought, conscience, and belief. UIA has not hesitated to threaten employees with disciplinary sanctions for failure to participate in union political marches.[12]

Pursuant to CBA, Article VI (5) and VII, UIA and PRASA unilaterally agree to take full union dues, initiation fees, and special assessments from each employee's salary, irrespective of the employees' free choice and whether or not they consent to supporting or associating with the

---

[12]Frances *Rosario, La UIA advirtió a sus miembros de sanciones si no iban a la marcha*, El Nuevo Dia (Feb. 10, 2017 https://www.elnuevodia.com/noticias/locales/nota/lauiaadvirtioasusmiembrosdesancionessinoibanalamarcha-2290025/ (last visited Sep. 16, 2019) (discussing how UIA members were warned by letter that it would be obligatory to attend a union's political march or they would be subject to penalties).

union. (SOF ¶¶30-32). The CBA's dues deduction provisions compel employees to be full union dues paying members. This forced extraction of dues, fees, and assessments from employees who do not agree with UIA or wish to associate with it contravenes basic First Amendment principles. *See e.g., Rutan*, 497 U.S. at 76*; Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *O'Hare Truck Serv. Inc., v. City of Northlake*, 518 U.S. 712 (1996); *Janus*, 138 S. Ct. at 2464 ("As Jefferson famously put it, 'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical."). *See also infra* at 19-21.

No compelling state interest justifies UIA's, PRASA's, and the PRLA's maintenance of membership requirements.[13] *See e.g. Abood*, 431 U.S. at 233-34 (recognizing "the freedom of an individual to associate for the purpose of advancing beliefs and ideas" and holding that compelling state interests justified *only* charging the portion of agency fees that are germane to collective bargaining). Even if UIA could contrive, *post hoc*, some hypothetical *compelling* interest, it could almost certainly be achieved through means significantly less coercive of Cruz's constitutional rights than forced membership requirements. *See Janus*, 138 S. Ct. at 2466-69.

**B.      The Court should award Cruz compensatory, declaratory, and permanent injunctive relief.**

The Court should award Cruz compensatory, declaratory, and injunctive relief because UIA, PRASA, and the PRLA, have caused and continue to subject Cruz to the deprivation of his rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments to the U.S. Constitution. The Court should enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P 57, declaring that UIA and PRASA violated Cruz's constitutional rights by forcing

---

[13] *See infra* at 25 (discussing the U.S. Supreme Court's recognition in *Janus* that there is no compelling state interest justifying compulsory union fees, which are even less coercive and invasive of individual liberties than forced membership in a labor organization).

him to be a full-fledged union member and by continuing to seize full-union dues from his wages after his membership resignation. The Court should permanently enjoin UIA and PRASA from restraining Cruz's rights to refrain from union membership and stop paying union dues. The Court should also award Cruz $525.00, plus interest, from UIA and PRASA as compensatory damages for the total amount of union dues deducted from Cruz's wages between October 26, 2016, and July 6, 2018. (SOF ¶¶61-62, 83-84).

The Court should also declare unconstitutional PRLA, 29 L.P.R.A. §§ 69(1)(b)-(c), 63(7)-(8) and 84(4), and award Cruz prospective injunctive relief as to the Governor, in her official capacity, to permanently enjoin any execution and enforcement of those provisions that requires Cruz or similarly-situated public corporation employees to become and remain union members in violation of their constitutional rights. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also* Cruz Resp. to Gov. Mot. to Dismiss, ECF No. 34, pp.1-3 (Feb. 7, 2018); (SOF ¶7).[14] The Court should also enter a declaratory judgment declaring unconstitutional the compulsory union membership requirements in CBA Articles VI (1), (2), (4), and (5), and Article VII. The Court should declare that the CBA provisions imposing compulsory union membership requirements are void and unenforceable, and order that UIA and PRASA remove such requirements from the CBA effective immediately. The Court should also permanently enjoin UIA and PRASA from maintaining and enforcing the CBA provisions insofar as they impose compulsory union membership requirements.

---

[14] *Ex Parte Young* allows individuals to sue state officials to prevent them from enforcing enactments that deprive persons of their U.S. Constitutional rights. The Governor is the state official charged with the statutory duty, under 3 L.P.R.A. § 1, to uphold and execute faithfully the laws of the Commonwealth, including the PRLA's unconstitutional compulsory union membership and forced dues deduction provisions, and to supervise the executive and ministerial officers who administer such laws. (SOF ¶7).

II.     **Compulsory union fee requirements violate Cruz's First Amendment rights.**

    A.     **UIA and PRASA violated Cruz's First Amendment rights by seizing compulsory union fees from Cruz after he resigned from union membership.**

The Court should award Cruz summary judgment on Count Two because UIA and PRASA violated Cruz's First Amendment rights by forcing him to pay compulsory union fees for collective bargaining, contract administration, grievance adjustment, and other administrative expenses. The First Amendment guarantees Cruz's right to resign from union membership and stop paying all union fees. *See Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). Cruz resigned from union membership on October 26, 2016, but UIA and PRASA continued seizing union dues *and fees* from his pay, without his voluntary affirmative consent and authorization until July 6, 2018. (SOF ¶¶61-64, 33-38).

UIA and PRASA committed a further violation of Cruz's First Amendment rights by seizing compulsory union dues and fees, without obtaining Cruz's voluntary affirmative consent and authorization. (SOF ¶¶61-64). The First Amendment requires unions and employers to obtain every employee's voluntary affirmative consent and authorization, and knowing and intelligent waiver of constitutional rights before taking money from them. *Janus*, 138 S. Ct. at 2486. *See also id*. ("By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed ... [T]o be effective, the waiver must be freely given and shown by clear and compelling evidence.") (internal citations omitted); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967); *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 680-682 (1999); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).[15]

---

[15] *See also Moran v. Burbine*, 475 U.S. 412, 421 (1986) (holding that the burden of proving waiver is always on the government actor). Knowing and intelligent waiver requires proof of "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *Johnson*, 304 U.S. at 464 (requiring an "intentional relinquishment or abandonment of a known right or privilege").

Cruz never voluntarily and affirmatively authorized or consented to UIA's and PRASA's forced fee deductions. Nor did Cruz ever knowingly and intelligently waive his constitutional right to refrain from financially supporting the union. (SOF ¶¶61-64). It is undisputed that UIA and PRASA never obtained or possessed any membership agreements, dues deduction authorizations, or other documents or communications signed by Cruz authorizing PRASA to deduct or assign union dues from Cruz to UIA. (SOF ¶¶61-64).

UIA and PRASA never had any constitutional authorization for taking any union fees in the first place. UIA and PRASA simply seized dues and fees from Cruz pursuant to their authority under the PRLA, 29 L.P.R.A. §§69(1)(b) and 84(4), and CBA Articles VI (5) and VII, irrespective of whether Cruz authorized and consented to union fee payments. (SOF ¶¶30-38); (SOF ¶¶61-64). The First Amendment precluded UIA and PRASA from unilaterally seizing union fees from Cruz, and neither the PRLA nor the CBA can provide the pretext for taking dues as they purport to do here. The First Amendment prohibits, *ab initio*, the PRLA and CBA from giving unions and employers unconstitutional authority to wield provisions in their collective bargaining agreements to circumvent employees' rights to consent to and authorize union fee payments.

## B. The PRLA and CBA circumvent the First Amendment's consent, authorization, and waiver requirements.

The PRLA, 29 L.P.R.A. §§ 69(1)(b) and 84(4), and CBA Articles VI (5) and VII, are unconstitutional insofar as they circumvent the First Amendment's consent, authorization, and waiver requirements. The First Amendment prohibits the government from compelling employees to surrender union fees, and public-sector unions and employers from automatically deducting such fees from employees' wages, without each employee's *personal* voluntary affirmative consent and authorization, and knowing and intelligent waiver. *Janus*, 138 S. Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages,

nor may any other attempt be made to collect such a payment, unless *the employee* affirmatively consents to pay.") (emphasis added).[16]

Contrary to the First Amendment's requirements, the Commonwealth gives unions and employers plenary power in PRLA 29 L.P.R.A. §§ 69(1)(b) and 84(4), to circumvent employee's personal consent and authorization with their adoption of dues deduction provisions in their collective bargaining agreements. PRLA 29 L.P.R.A. § 69(1)(b) states, "employers shall not be prohibited from deducting any sum of money from the salary, earnings, or income of an employee for the payment of dues to a labor organization when such deduction is required by the terms of a collective bargaining agreement…". PRLA 29 L.P.R.A. § 84(4) further establishes that public-sector unions and employers can seize any union fees from employees' wages "provided such deduction is required by virtue of the terms of a collective bargaining agreement executed between the employer and a labor organization."

UIA and PRASA adopted mandatory dues deduction provisions in CBA Article VI (5) and Article VII, whereby they agree to deduct membership dues, fees, fines, and other assessments, from employees' wages. (SOF ¶¶30-32). The PRLA and CBA compels Cruz and similarly-situated employees to surrender compulsory union fees to UIA and PRASA through forced fee deductions without any regard for the proper consent, authorization, and waiver required by *Janus*. The PRLA and the CBA are unconstitutional because they undermine the First Amendment's requirement that unions and employers must obtain every individual employee's personal voluntary affirmative consent and authorization to union fees, as well as each employee's knowing and intelligent waiver of his constitutional right to refrain from subsidizing the union.

---

[16] *Puerto Rican Ass'n of Professors*, 2019 WL 2185047 *14 ("Be it noted that unless the unions … have the express, affirmative, and contemporary consent of public employees to join them as members and to have the payment of fees or dues deducted from their wages, public servants cannot be compelled to pay these.").

**C.    The Court should award Cruz all requested declaratory, compensatory, and injunctive relief for UIA's and PRASA's seizing compulsory union fees from his pay in violation of his First Amendment rights.**

The Court should declare, in accordance with *Janus*, that PRLA §§ 69(1)(b) and 84(4), are unconstitutional insofar as they circumvent the First Amendment's requirements under *Janus*. The Court should declare that these provisions are unconstitutional because they authorize employers and unions to seize union dues and fees whenever required by a CBA, irrespective of individual authorization and consent. Accordingly, the Court should permanently enjoin the Governor from enforcing the PRLA, 29 L.P.R.A. §§ 69(1)(b) and 84(4), to allow unions and employers to seize compulsory union fees without individualized voluntary affirmative consent and knowing and intelligent waiver as required by *Janus*.

The Court should also declare that UIA and PRASA cannot unilaterally authorize forced dues deductions without employees' constitutionally-valid consent and authorization, and permanently enjoin UIA and PRASA from seizing compulsory union fees under CBA Articles VI (5) and VII, without individualized voluntary affirmative consent and knowing and intelligent waiver as required by *Janus*. 138 S. Ct. at 2486.

The Court should also declare that UIA and PRASA cannot require Cruz or other employees to pay compulsory union fees as a condition of employment, and that their actions in forcing Cruz to pay such fees after his October 26, 2016 resignation were unconstitutional. The Court should grant Cruz's requests for injunctive relief, and permanently enjoin UIA and PRASA from seizing compulsory union fees, and enforcing any compulsory union fee requirements.

The Court should also, in accordance with *Janus*, award Cruz compensatory damages, requiring UIA and PRASA to refund Cruz $525, plus interest, for all union dues and fees seized from his wages between October 26, 2016, and July 7, 2018. (SOF ¶¶83-84). If the Court does not

award Cruz compensatory damages for the full amount of dues deducted between October 26, 2016, and July 6, 2018, pursuant to Count Two, then the Court should still provide Cruz the $525, plus interest, for all union dues and fees seized in the absence of a proper *Hudson* notice, or award an injunction requiring UIA and PRASA to provide the notices and procedures required under *Hudson,* including a *nunc pro tunc remedy* for Cruz and similarly-situated employees to object retroactively to the amount of nonchargeable union fees required by the union. UIA should be required to give the Court notice within thirty days of whether it will provide Cruz with the *Hudson* notice of $525, plus interest. UIA and PRASA never provided Cruz with *Hudson* rights and procedures. (SOF ¶¶89-93).[17] *See* ECF No. 46, pp.8, 14-15; ECF No. 77, p.2 n.2. As previously noted, if the Court grants Cruz's Motion for Summary Judgment on Count Two and awards Cruz all union dues and fees seized after his October 26, 2016 resignation, UIA's and PRASA's failure to provide Cruz his *Hudson* rights then becomes irrelevant.

Having fully briefed the Court's Order to Show Cause and UIA's motion to dismiss, Cruz has demonstrated that UIA's objections to *Janus*'s application here are unavailing. *See* ECF No. 46 (Cruz Resp. to UIA Mot. to Dismiss); ECF No. 77 (Cruz Resp. to UIA Mot. in Compliance); *see also* ECF No. 112, pp.6-14 (Cruz Obj. to Union Movants' Opp'n to Compl). Contrary to UIA's arguments, all collective bargaining with public employers is *inherently* political. *Janus*, 138 S.

---

[17] Employers also have a duty to honor objecting employees' First Amendment procedural rights under *Hudson*. *See Chicago Teachers v. Hudson*, 475 U.S. 292, 301-03 (1986); *Tierney v. City of Toledo*, 824 F.2d 1497, 1504 (6th Cir. 1987) ("[N]o union **or employer** may take any action to enforce a non-union member's duty to pay any dues, whether through a deduction from wages or payment from wages already paid, until a plan with procedures meeting the commands of … *Hudson* is established and operating) (emphasis added); *Masiello v. U.S. Airways, Inc.*, 113 F. Supp. 2d 870, 876 (W.D. N.C. 2000) ("In practical terms, *Hudson* imposes on unions and employers the duty to provide all objecting nonmembers with [procedural protections including pre-collection notice and audited financial disclosures, a fairly calculated advance reduction in the amount of the fee calculation, an escrow of all collections reasonably in dispute, and an expeditious hearing before an impartial decisionmaker to evaluate the agency fee calculations]."). *See also Tavernor v. Illinois Fed'n of Teachers*, 222 F.3d 842, 847-51 (7th Cir. 2000). *See also* Cruz Resp. to PRASA Mot. in Compliance, ECF No. 78, pp8-9. Despite Cruz's request that PRASA provide such notice and procedures, the employer did not do so. (SOF ¶¶ 47, 70-72).

Ct. at 2472-73, 2478; *see also* Cruz Resp. UIA Mot. for Compliance, ECF No. 77, pp.6-7 (Sep. 6, 2018) (discussing why UIA's collective bargaining speech is inherently political). Furthermore, contrary to the union's representations, the UIA Constitution, the CBA, and the union's activities demonstrate that, the union is engaged in political pursuits. (SOF ¶¶10, 27-29); *see also* ECF No. 159, ¶5 (noting UIA counsel's report that the union could not respond to discovery requests by July 26 "due to the current political situation in Puerto Rico, and the union's involvement in those events").[18] The UIA Constitution shows that the union is founded for the purpose of advancing social and political goals. (SOF ¶¶27-29). Likewise, UIA and PRASA's CBA reflects the political nature of their collective bargaining. (SOF ¶10).

PRASA is a public employer within the meaning of the First Amendment and federal labor law. *See e.g., Molina v. Union Independiente Autentica De La AAA*, 555 F. Supp. 2d 284, 287-88, 298-301 (D.P.R. 2008); *See also E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados*, 279 F3d 49, 51 n.1 (1st Cir. 2002) ("Since the UIA represents government employees, its dealings with [PRASA] are not governed by the [NLRA]."). NLRB Case Nos. 12-CA-196414, 12-CB-196433 (June 30, 2017) (NLRB in San Juan, PR finding that the agency excluded PRASA from the NLRA because it was created by the Commonwealth and "deemed an agency with an essential government function."). *See also* Cruz Resp. UIA Mot. for Compliance, ECF No. 77, pp.3-6 (discussing PRASA's characteristics in the context of this Court's decision in

---

[18] *See also e.g.*, *Se arrodillaron ante la Junta*, La Isla Oeste (June 15, 2018), https://laislaoeste.com/2018/06/15/se-arrodillaron-ante-la-junta/ (last visited Sep. 16, 2019); Fabiola Pagán, *Unión Independiente Auténtica de los Empleados AAA respalda huelga UPR*, Pulso Estudiantil (April 13, 2017 1:44 p.m.), https://www.pulsoestudiantil.com/los-empleados-de-la-autoridad-de-acueductos-y-alcantarillados-respaldan-la-lucha-de-la-upr/ (last visited Sep. 16, 2019); Brenda Peña López, UTIER y UIA instalan campamento frente al Capitolio, Primera Hora (Mar. 16, 2015 3:51 p.m.), https://www.primerahora.com/noticias/gobierno-politica/nota/utieryuiainstalancampamentofrentealcapitolio-1071385/ (last visited Sep. 16, 2019).

*Molina*).[19]

There is no compelling interest that can justify requiring employees to pay compulsory union fees. *Janus*, 138 S. Ct. at 2466-69 (rejecting the "labor peace" and "free rider" justifications as compelling state interests for compulsory union fees); *see also id*. at 2465-66 ("[I]t is now undeniable that 'labor peace' can readily be achieved 'through means significantly less restrictive of associational freedom than the assessment of agency fees." (quoting *Harris*, 134 S. Ct. at 2639)).

## CONCLUSION

For all of the foregoing reasons, this Court should grant Cruz's Motion for Summary Judgment on Counts One and Two (in which case Count Three becomes irrelevant) and award him all requested relief.

Date: September 16, 2019                    Respectfully submitted,

**/S/ VERONICA FERRAIUOLI-HORNEDO**
Veronica Ferraiuoli-Hornedo
USDC-PR 213814
*vero@ferraiuoli.pr*
Estudio Legal Ferraiuoli, PSC
P.O. Box 195384
San Juan, PR 00919-5384
Tel: (787) 296-4733
Fax: (787) 296-4430

**/S/ MATTHEW B. GILLIAM**
Milton L. Chappell (*admitted pro hac vice*)
D.C. Bar No. 936153
*mlc@nrtw.org*
Matthew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
Ángel J. Valencia
USDC-PR 300009

---

[19] PRASA itself agrees that it is a public employer. PRASA Mot. in Compliance, ECF No. 70, 1-2 n.1 ("It is undisputed that public corporations' employees are considered public employees.). Meanwhile, UIA has argued in federal court that PRASA is a public employer. *Molina*, 555 F. Supp. 2d at 286, 297 (UIA defendants, including the current UIA President, Pedro Irene Maymi, arguing that UIA is a "government union" and represents "government employees."). When Cruz attempted to resign, UIA also represented to him that private sector law does not apply. (SOF ¶52).

*ajv@nrtw.org*
c/o National Right to Work
  Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: (703) 321-8510
Fax: (703) 321-9319

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

By**: /s/ Matthew B. Gilliam**