# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **REYNALDO CRUZ,**<br><br>　　　**Plaintiff,**<br><br>　　　　　　**v.**<br><br>**UNIÓN INDEPENDIENTE AUTÉNTICA DE LOS EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, <u>et al.</u>,**<br><br>　　　**Defendants.** | **CIVIL NO. 17-2261 (PAD)** |

## OPINION AND ORDER

Delgado-Hernández, District Judge.

　　　Plaintiff initiated this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that compulsory union membership and fee requirements in a collective bargaining agreement between his employer and a labor union, and in the Puerto Rico Labor Relations Act, Law No. 130 of May 8, 1945, P.R. Laws Ann. tit. 29 § 61 *et seq*., violate the First and Fourteenth Amendments (Docket No. 1). Before the court are "Plaintiff Reynaldo Cruz's Motion for Attorney's Fees from Intervenors OPEPBAU and SIFEU," with accompanying exhibits (Docket No. 146); "Plaintiff Reynaldo Cruz's Motion to Deem Admitted UIA's Answers to Certain Requests for Admission" (Docket No. 161), which Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados ("UIA") opposed (Docket No. 166); and the Puerto Rico Aqueduct and Sewer Authority's "Request for Entry of Default" against the UIA (Docket No. 150), which UIA opposed (Docket No. 151), filing later that same day its "Answer to the Crossclaim" (Docket No. 152). For the reasons explained below, the motions are DENIED.

# I. PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

This issue arises out of an attempt by two Puerto Rico public sector unions, the Office and Professional Employees of the Public Building Authority Union ("OPEPBAU") and the State Insurance Fund Employees Union ("SIFEU"), to intervene in this litigation (Docket No. 94). Initially, the court granted the intervention request (Docket No. 95). Plaintiff asked for reconsideration (Docket No. 96), which the moving unions opposed (Docket No. 107). Plaintiff replied (Docket No. 111). The court examined the issue anew, granting plaintiff's motion for reconsideration (Docket No. 141, p. 2). By extension, it denied intervenor status to the OPEPBAU and the SIFEU (Docket No. 143, p. 10). Nevertheless, the court allowed them to participate in the case as amicus. Id. Plaintiff alleges that because he successfully opposed the moving unions request to intervene, he is entitled to $18,437.50 in attorney's fees and $728.81 in expenses under 42 U.S.C. § 1988 (Docket No. 146, pp. 1, 8).

Pursuant to the American Rule, in the United States each litigant "pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Insurance Co., 560 U.S. 242, 253 (2010). One of the congressionally created exceptions is found in 42 U.S.C. § 1988, which authorizes reasonable attorney's fees to be awarded to the "prevailing party" as part of the costs brought in a suit to enforce various civil rights statutes, including 42 U.S.C. § 1983.[1] In order to determine whether an award of attorney's fees is appropriate, then, the

---

[1] The Civil Rights Attorney's Fees Awards Act states, in relevant part, that "[I]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…" 42 U.S.C. § 1988(b).

court must evaluate "whether the party seeking fees has prevailed in the litigation." <u>CRST Van Expedite, Inc.</u> v. <u>E.E.O.C.</u>, ---U.S.----, 136 S.Ct. 1642, 1646 (2016).

The touchstone of the prevailing party inquiry is "the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." <u>Sole</u> v. <u>Wyner</u>, 551 U.S. 74, 82 (2007)(<u>quoting</u> <u>Texas State Teachers Assn</u>. v. <u>Garland</u>, 489 U.S. 782, 792-793 (1989)). For that reason, a plaintiff prevails when he secures an enforceable judgment on the merits or a court-ordered consent decree, as in those instances, he has received a judicially sanctioned change in the legal relationship between the parties. <u>See</u>, <u>CRST Van Expedited,</u> 136 S.Ct. at 1646 (stating formulation).

In the absence of an enforceable judgment or remedial order, award of fees *pendente lite* is authorized but only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal. <u>See</u>, <u>Hanrahan</u> v. <u>Hampton</u>, 446 U.S. 754, 757 (1980)(so noting).[2] A party, however, may not be fairly considered a prevailing party on account of interlocutory dispositions affecting the "extent of discovery" or other "procedural or evidentiary rulings." <u>Id.</u> at 759. In consequence, plaintiff is not a prevailing party. While he obtained a favorable ruling on a procedural motion, there is no enforceable judgment or final remedial order, consent decree, or alteration of the relationship between the parties following a favorable ruling on the merits of his claims.

---

[2] This scenario has been recognized in some summary judgment contexts. *Compare* <u>Mills</u> v. <u>Electric Auto-Lite Co.</u>, 396 U.S. 375, 389-396 (1970)(given that the Court of Appeals should have affirmed partial summary judgment on the issue of liability under Securities Exchange Act of 1934, petitioners were entitled to an interim award of litigation expenses and reasonable attorney's fees) *with* <u>Proctor</u> v. <u>Consolidated Freightways Corp. of Delaware</u>, 795 F.2d 1472, 1479 (9th Cir. 1986)(plaintiff was not a prevailing party because although she established that she was entitled to trial on her discrimination claim, she had yet to prevail on the merits of her claim).

Plaintiff argues that federal courts can award attorney's fees denying intervention because such interim orders result in the final resolution of a separate dispute that is sufficiently significant and discrete from the underling claims (Docket No. 146, p. 10). As support, he directs the court's attention to Van Hoomissen v. Xerox Corp., 503 F.2d 1131 (9th Cir. 1974), García-Rubiera v. Fortuño, 727 F.3d 102 (1st Cir. 2013), and In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 982 F.2d 603 (1st Cir. 1992). See, Docket No. 146, p. 10. These cases do not lead to the remedy that plaintiff is after.

In Van Hoomissen, plaintiff sued Xerox, his former employer, for allegedly dismissing him in relation for efforts to recruit minorities. The Equal Employment Opportunity Commission ("EEOC") sought leave to intervene, alleging that Xerox engaged in discriminatory hiring practices and retaliation. The district court granted the EEOC's motion to intervene but limited intervention to the issue of retaliation. The EEOC appealed, and the Ninth Circuit dismissed the appeal because the district court's order was not final, and therefore, not appealable. See, Van Hoomissen v. Xerox Corp., 497 F.2d 180, 183 (9th Cir. 1974)(opinion dismissing interlocutory appeal).

Xerox moved for an award of attorney's fees against the EEOC as part of its costs on appeal, which the Ninth Circuit granted, reasoning that the event was significant enough to be treated separately. See, Van Hoomissen, 503 F.2d at 1133 (opinion granting fees after dismissal of appeal). So, the award was not predicated on a successful opposition to a motion to intervene, but on dismissal of the interlocutory appeal for lack of jurisdiction. As the Ninth Circuit stated, "the fact that Xerox prevailed on this appeal qualifies it as a prevailing party eligible for an award of attorney's fees *connected with the appeal*." Van Hoomissen, 503 F.2d at 1133 (emphasis added). But there was no interlocutory appeal here. Even more, the Ninth Circuit warned that "litigation

should not be dissected to the point that the losing party be permitted to recover attorney's fees connected with every procedural motion on which it prevails." Id. at 1133. Yet that is precisely what plaintiff seeks: attorney's fees linked to a procedural motion.

Recognizing the same substantive-procedural dichotomy, the First Circuit noted in Coalition for Basic Human Needs, 691 F.2d 597, 600 (1st Cir. 1982), that the requirement that legal success achieve some of the benefits the parties sought in order to obtain an award of fees "merely distinguishes cases in which plaintiffs obtain some substantive relief from those in which the victories are purely procedural"). Id. In like manner, Mary Frances Derfner and Arthur D. Wolf, *Court Awarded Attorney's Fees*, Lexis Nexis (2018), point out that in general, a plaintiff must obtain some form of judicial relief on the merits of a claim to be considered prevailing party under a fee shifting statute, and because mere procedural victories do not make the plaintiff a prevailing party, courts generally do not award attorney's fees against unsuccessful applicants for intervention. Id. at pp. 8-33, 8-41, 34-79.

In this light, in Coalition for Basic Human Needs, fees were awarded to the plaintiff Coalition because it had established its entitlement to some relief on the merits on appeal "by obtaining an injunction pending appeal that effectively determined the parties' rights." 691 F.2d at 601.[3] Similarly, in García-Rubiera, 727 F.3d at 102, the plaintiffs had prevailed in court on the merits of their procedural due process claims. Id. at 105-106. And in In re Nineteen Appeals, 982 F.2d at 603, plaintiffs had prevailed on the liability phase of the case, and applying Supreme Court and appellate caselaw, the First Circuit held that an order "which definitively resolves claims

---

[3] The First Circuit "made its decision only after careful consideration of the Coalition's legal claims." Coalition for Basic Human Needs, 691 F.2d at 601. *Compare with*, Race v. Toledo-Dávila, 291 Fed.3d 857, 859 (1st Cir. 2002), where the district court did not err in refusing a fee award because even though an individual may be entitled to attorney's fees without having obtained a favorable final judgment, "he must obtain relief based on the merits of at least some of his claims," and the record reflected absence of substantive review of the merits of plaintiff's claim.

for attorney's fees and expenses payable out of a common fund is severable from the decision on the merits and sufficiently final to be separately appealable under 28 U.S.C. § 1291." Id. at 609-610. By contrast, there has been no ruling on liability in this case, and no dispute over a common-fund award.

Plaintiff contends the court should focus on whether he prevailed against the union movants, not the merits of his claims against the original defendants (Docket No. 145, p. 11). He cites to a number of cases where fees were awarded for successfully opposing intervention. Id. For the most part, these cases are distinguishable under the Supreme Court's Hanrahan framework. For example, in Moten v. Bricklayers, Masons and Plasterer Intern. Union of America, 543 F.2d 224 (D.C. Cir. 1976), plaintiffs filed a class action against two unions in the bricklaying industry. The parties entered into a stipulation of settlement, which the district court approved. Construction industry employers argued that they should be a party to any agreement and that the settlement should not be permitted to go into effect, lacking, as it did, any employer input. The district court entered a final judgment approving the stipulation of settlement and dismissing the action with prejudice. The District of Columbia Circuit affirmed the settlement order and granted plaintiffs' motion to tax attorney's fees and other costs, noting that in order to maintain their hard-won settlement agreement, plaintiffs were compelled to defend against the purported intervenor's efforts.

In League of United Latin American Citizens, Statewide ("LULAC") v. City of Boerne, 2010 WL 11541836 (W.D.Tex. Aug. 9, 2010)(Docket No. 146, p. 11), the court entered an order dismissing the case based on the parties' joint motion to dismiss and compromise settlement agreement pursuant to which the City agreed to modify the at-large election system for city council to provide for cumulative voting. Three years later, the parties filed a joint motion to reopen the

case and modify the compromise settlement agreement contending that the cumulative voting system had failed to produce the results the parties desired. The parties sought to modify the compromise settlement agreement to provide for election of the city council under a single-member district electoral system in hopes of producing the desired remedy with respect to minority candidate and voter participation and voting strength. The court granted the joint motion to reopen and ordered that the parties modified compromise settlement agreement be implemented as the Court's order and judgment.

Subsequently, an individual sought intervention alleging that the modified compromise settlement agreement violated "his and all Boerne citizens' state constitutional and statutory rights to vote." The court denied the motion to intervene and awarded reasonable attorney's fees incurred in opposition to the intervention request, viewing the attempt to intervene as a challenge to a settlement agreement, an agreement by which the party seeking the fees succeeded on a significant issue in litigation, which achieved some of the benefits the parties sought in bringing the suit.

In Thompson v. Sawyer, 586 F.Supp. 635 (D.D.C. 1984), plaintiffs obtained an award of attorney's fees for services rendered in connection with three unsuccessful attempts by a Local union to intervene for the purpose of challenging consent orders previously entered in plaintiffs' favor. Thus, the plaintiffs "were forced to defend against the unsuccessful efforts of a non-party to alter the relief successfully attained by the plaintiffs after years of litigation." Id. at 638-639. And in S & R Wrecker Service, Inc. v. Micklenburg County, 652 F.Supp. 527 (W.D.N.C. 1987), the Court awarded attorney's fees against an unsuccessful intervenor, because it purported to become a party and modify the order granting plaintiff relief. Id. at 529. Plaintiff is nowhere near

the procedural posture the opponents of intervention were in when they were granted attorney's fees in those cases.[4]

To be sure, in Robideau v. O'Brien, 525 F.Supp. 828 (E.D.Mich. 1981), the court did grant attorney's fees with respect to the denial of a motion to intervene. The court does not, however, consider that case persuasive. The Robideau court found Van Hoomissen, 497 F.2d at 180 and Prate v. Freedman, 583 F.2d 42 (2d Cir. 1978) similar to the scenario before it, "in that a primary party [succeeded] in obtaining an order denying a motion to intervene." Id. at 879-880. But as mentioned earlier, Van Hoomissen involved an interlocutory appeal, and the Ninth Circuit warned against recovery of attorney's fees connected with procedural motions. Further, in Prate the fees were granted to plaintiffs for successfully defending a consent judgment. Id. at 44. And those elements are all missing from the case at bar.[5]

Plaintiff relies on Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754 (1989) to assert that he is entitled to attorney's fees because to his way of thinking, the intervention request was frivolous, unreasonable and without foundation (Docket No. 146, p. 13). In Zipes,

---

[4] Plaintiffs also cite Barrett v. Thomas, 649 F.2d 1193 (5th Cir. 1981), *cert. denied* Weber v. Barrett, 450 U.S. 1022 (1981), Desena v. Lepage, 847 F.Supp.2d 207 (D. Me. 2012), and Akron Center for Reproductive Health v. City of Akron, 604 F.Supp. 1268 (N.D. Ohio 1984), cases involving either intervention or an attempt to intervene and award of fees. These cases are readily distinguishable from the instant case. In Barrett, plaintiffs prevailed after a trial on the merits and were awarded fees against the individual defendant – a former Sheriff of Dallas County, Texas – and the County, which had unsuccessfully moved to intervene after the trial. Yet fees were awarded against the County not because plaintiffs successfully opposed the request to intervene, but on the theory that a § 1988 attorney's fees award may run against a public treasury for § 1983 violations by public officers acting in their official capacities even though the public entity is not named as a defendant in the suit. See, 649 F. 2d at 1201-1202. In Desena, plaintiff prevailed on their claim that the apportionment of Maine's congressional districts was unconstitutional, and even then, the intervenor was held not liable for attorney's fees. See, 847 F.Supp.2d at 209, 217. In Akron Center, plaintiffs prevailed on the merits and sought and were awarded attorney's fees against intervenors. The intervenors had filed nearly 40 documents, including at least 14 to which plaintiffs had to independently respond. Furthermore, the intervenors took an active role at trial, and on an appeal, fully participated in the proceedings at the Court of Appeals and unsuccessfully petitioned the United States Supreme Court for a writ of certiorari, filing briefs in the consolidated appeals of the other parties. See, 604 F.Supp. at 1272.

[5] Parenthetically, other cases that the Robideau court cited in 525 F.Supp. at 830 to support its ruling are likewise distinguishable. See, Baker v. City of Detroit, 504 F.Supp. 841 (E.D. Mich. 1980)(awarding attorney's fees to individuals and association that participated as intervening defendants in the trial of action involving an affirmative action program); and EEOC v. Murphy Motor Freight Lines, Inc., 488 F.Supp. 381 (D. Minn. 1980)(awarding attorney's fees after trial on the merits to employee who intervened in a suit brought by the EEOC against the employer that had harassed the employee).

female flight attendants brought an action against Trans World Airlines to challenge an allegedly discriminatory employment policy under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("CRA"). The company abandoned the policy and settled the case. A union representing flight attendants who have not been affected by the policy intervened to challenge the settlement. The district court approved the settlement over the intervenor's objections and granted plaintiffs' petition for an award of attorney's fees against the defendant and the intervenor pursuant to the Title VII fee-shifting provision, Section 706(k) of the CRA, 42 U.S.C. § 2000e-5(k). The court of appeals affirmed, and the Supreme Court reversed, holding that attorney's fees should be awarded against losing intervenors only where the intervenors' action was frivolous, unreasonable or without foundation. Id. at 761.

In support of this conclusion, the Supreme Court recognized that the purpose of the fee-shifting provision "is to vindicate the national policy against wrongful discrimination by encouraging victims to make the wrongdoers pay at law – assuring that the incentive to such suits will not be reduced by the prospect of attorney's fees that consume the recovery." Zipes, 491 U.S. at 761. From this perspective, it emphasized the crucial connection between liability for violation of federal law and liability for attorney's fees under federal fee-shifting statutes, pointing out that liability on the merits and responsibility for fees go hand in hand. Id. at 762-763. Further, it noted that while a labor union's good-faith advocacy was not the specific type of conduct that Section 706(k) was intended to encourage, it is not conduct that the statute aims to deter. Id. at 765. And it observed that Congress did not, with respect to intervention-related fees, wish to give the plaintiff an advantage, presumably by shifting that type of expense from that party to the intervenor. Id. at 764.

With all this in mind, plaintiff is not entitled to recover fees or expenses against the unions for attempting to intervene.  Prevailing party status – what the flight attendants were in <u>Zipes</u> and plaintiff here is not – is necessary to qualify for recovery of fees and expenses from an intervenor. Without that status, a party has no claim against the intervenor under <u>Zipes</u>.  Furthermore, there is no indication that merely attempting to intervene in a civil rights case in the present circumstances is conduct that Section 1988 was intended to deter.

Plaintiff states that the court's equitable powers allow him to recover attorney's fees when the opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or for conduct that unnecessarily prolongs or delays litigation (Docket No. 146, p. 12 n. 10).  He claims that the unions' intervention request caused disruption, delay and expense with repeated postponements to case proceedings, missed a second deadline and filed a frivolous motion for reconsideration seeking an extraordinary measure solely to postpone proceedings, advancing cumulative arguments despite knowing that their interests were adequately protected and represented by UIA (Docket No. 146, p. 13).

Courts have the inherent power to award fees as "sanction for conduct which abuses the judicial process." <u>Chambers</u> v. <u>NASCO, Inc.</u>, 501 U.S. 32, 44-45 (1991).  Thus, a court may assess costs and attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. <u>Id.</u>  at 45-46.  The record does not, however, satisfy those conditions.[6]  At the

---

[6] In <u>Chambers</u>, the Supreme Court recognized that neither Fed.R.Civ.P. 11 nor 28 U.S.C. § 1927 displaces the inherent power of a district court to impose sanctions for bad faith conduct.  <u>See</u>, 501 U.S. at 49-50 (discussing issue).  Also, it noted that "when there is bad-faith conduct in the in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." <u>Id.</u> at 50.  And it expressed that, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." <u>Id.</u>  From these formulations, it has been observed that "if a litigant's conduct is sanctionable, and the conduct that is sanctionable under a rule or statute is intertwined with conduct that is sanctionable only under the court's inherent power, the court need not first apply the rule or statute to discrete violations before it can invoke its inherent power to address the remaining instances of redressable conduct" but "[i]n all events, the court should be sure to explain why use of its inherent power is warranted under the circumstances."  5A Charles Alan Wright, Arthur R. Miller and A. Benjamin Spencer, *Federal Practice and Procedure Civil (2018)*, pp. 417-418.  As plaintiff

outset, the element of bad faith is missing. Occasionally, parties intervene or attempt to intervene in ongoing civil rights litigation to protect what they perceive as "personal rights implicated by the action." Mary Frances Derfner and Arthur D. Wolf, supra at p. 34-78. Strictly speaking, they may have other rights compared to those of other parties in the case. See, Zipes, 491 U.S. at 765 (so noting). But they "cannot be faulted for joining in litigation in an effort to protect those rights." Id. Therefore, it is unremarkable that the OPEPBAU and SIFEU attempted to intervene. The importance of the legal issues raised in this action – constitutional challenges to compulsory union membership and fee requirements – should make this apparent. That is so even when, at the end of the day, the moving unions "sought to advance the same argument as the defendant(s)." Id.

Nor does the procedural tract reflect dilatory tactics resulting in sanctionable waste of time or resources. There was no abuse of the judicial process. The motion to intervene was filed on November 27, 2018 (Docket No. 94) and granted the same day (Docket No. 95). On December 21, 2018, plaintiff requested reconsideration (Docket No. 96), which the OPEPBAU and SIFEU opposed on January 23, 2019 (Docket No. 107). On February 1, 2019, plaintiff replied (Docket No. 111). And on February 21, 2019, the court reconsidered its initial ruling, granted plaintiff's motion for reconsideration, and denied the moving union's request to intervene, instead permitting them to participate in the case as amicus (Docket Nos. 141, p. 2 and 143, p. 10). They did not request reconsideration. Their attempt to intervene did not result in protracted litigation or undue delay. The corresponding motion cycle and disposition lasted approximately 90 days. On this record, neither fees nor costs are justified in connection with plaintiff's opposition to the unions' attempt to intervene. *Compare with*: Woods v. State of New York, 494 F.Supp. 201, 202-204

---

does not address these distinctions, the court focuses on the inherent power aspect of plaintiff's argument. Still, from the record, there would be no basis upon which to sustain sanctions under the Rules for attempting to intervene.

(S.D.N.Y. 1980)(awarding fees against plaintiff who engaged in harassing behavior, filing nine lawsuits, complaints or formal grievances concerning events arising out of an unsatisfactory performance rating, even though the State Division of Human Rights found that there was no probable cause to believe that the defendants had either discriminated or retaliated against the plaintiff and there was no evidence to support the allegations as charged).[7]

## II.     PRASA'S REQUEST FOR DEFAULT

PRASA moves for entry of default against UIA for failure to timely answer PRASA's crossclaim (Docket No. 150).  Fed.R.Civ.P. 55(a) allows a party to request entry of default against a party against whom relief is sought if that party fails to plead or otherwise defend itself.  The UIA answered PRASA's crossclaim on May 15, 2019, the same day default entry was sought (Docket No. 152).  In consequence, the motion must be denied as moot.

## III.     REQUEST FOR ADMISSIONS

Plaintiff asks the court to deem admitted certain requests for admissions submitted to the UIA, or, in the alternative, to issue an order to the UIA to specifically address those matters. (Docket No. 161, p. 1).  Plaintiff filed a motion for summary judgment (Docket No. 173) together with a supporting statement of material facts, including the request for admissions as exhibits (Docket Nos. 174-6, 174-7, 182-6, 182-7).  Defendants opposed the motion for summary judgment (Docket Nos. 190 and 191).  The parties replied (Docket Nos. 204, 205, 213) and sur-replied (Docket No. 205 and 216).  With the benefit of a fully developed record, the court will consider the arguments and rule on this matter as part of its evaluation of the merits of the action.  In

---

[7] See also, Deutsche Bank Nat. Trust Co. v. Story, 429 Fed.Appx. 846 (11th Cir. 2011)(sanctioning defendants under Fed.R.Civ.P. 11 for repeatedly making frivolous removals).

consequence, at this juncture the motion to deem admitted UIA's answers to certain requests for

admission must be denied.

**SO ORDERED.**

San Juan, Puerto Rico, this 5th day of March, 2020.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge